**Edward Larry JACKSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 90–5280.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1991.

Decided March 6, 1991.

Paul Engh, Minneapolis, Minn., for appellant.

John M. Lee, Minneapolis, Minn., for appellee.

Before FAGG and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Edward Larry Jackson appeals from the district court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2255. Jackson claims that his trial counsel's actions taken in response to Jackson's wish to testify constituted ineffective assistance of counsel and violated Jackson's right to testify. We affirm.

## BACKGROUND

A jury convicted Jackson of seven counts arising out of a check forging and bank fraud scheme. This court affirmed his conviction in all respects. *United States v. Long,* 857 F.2d 436 (8th Cir.1988). On direct appeal, Jackson also raised an ineffective assistance of counsel claim, alleging that his trial counsel had abandoned his role of advocate and coerced Jackson not to testify by suggesting to the trial court, outside the jury's presence, that Jackson might perjure himself. At the close of the government's case, Jackson's counsel had approached the bench and told the court that Jackson wished to testify and that he was concerned about his testimony. After the judge excused the jury and cleared the courtroom, counsel stated: "Without getting into too much detail, I'm not sure if it wouldn't be appropriate for me to move for a withdrawal from this case based upon what I think may be elicited on the stand.... I'm concerned about the testimony that may come out and I'm concerned about my obligation to the Court." The court then informed Jackson that an attorney was not permitted to participate in introducing evidence which he believed not to be true, but that Jackson had a legal right to testify on his own behalf as he chose.

Following a discussion between Jackson and his counsel, Jackson decided not to testify. The court again told Jackson of his right to testify and asked if he had any doubts. Jackson replied that he understood his rights and that he did not wish to testify.

On direct appeal, this court found that Jackson's claim differed from that presented in *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), in three respects and that these differences raised constitutional issues that could be resolved only after an evidentiary hearing. *Long*, 857 F.2d at 444. The court suggested that Jackson move for such a hearing in a habeas proceeding, and Jackson did so. Jackson and his former counsel testified at an evidentiary hearing before a magistrate. The magistrate, applying the three-part analysis suggested by this court on direct appeal, concluded that Jackson's counsel's conduct was not deficient and had not prejudiced his defense, and that Jackson had knowingly and voluntarily waived his right to testify. After a de novo review, the district court adopted the magistrate's report and recommendation and denied Jackson's petition.

## DISCUSSION

In *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), the Supreme Court held that a criminal defendant who was persuaded not to testify falsely by his counsel's warning that he would advise the court of his belief that the defendant's testimony was false could not show the prejudice necessary to meet the *Strickland* standard of ineffectiveness of counsel. *Id.* at 175, 106 S.Ct. at 998; *see also Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984) (to establish ineffective assistance of counsel, a habeas petitioner must show that his attorney's performance was deficient and that the deficient performance so prejudiced the defense as to undermine confidence in the outcome of the trial). The defendant in *Whiteside* did testify at trial, but left out of his testimony the material that his counsel believed was false. As this court noted on Jackson's direct appeal, Jackson's ineffective assistance claim raises three questions not presented in *Whiteside*. *See Long*, 857 F.2d at 444.

■ First, the trial record did not show whether Jackson's counsel had a firm factual basis for believing Jackson would testify falsely. If Jackson's counsel had no basis for believing Jackson would lie, counsel's actions in informing the court of the possible need for him to withdraw from representing Jackson would have been a violation of Jackson's rights. *Id.* Second, the court noted that Whiteside took the stand and was "restricted" only from testifying falsely. Because Jackson did not testify at all, the record did not indicate whether his counsel's actions restrained him from giving truthful testimony. *Id.* at 446. Third, in contrast to the attorney's actions in *Whiteside*, Jackson's counsel revealed his belief about Jackson's potential testimony to the trial court. For such a disclosure to be proper, counsel first must have attempted to dissuade Jackson from committing perjury. *Id.* at 446 n. 6 (citing *Whiteside*, 475 U.S. at 169, 106 S.Ct. at 995). The court also noted the need to determine whether Jackson's waiver of his right to testify was voluntary and whether any of his rights were violated prior to the waiver. *Id.* at 446–47.

■ At the evidentiary hearing on Jackson's habeas petition, Jackson's trial counsel testified about a conversation he had with Jackson in the court holding cell following the close of the government's evidence:

> Well, I asked him why he wanted to testify, and he indicated to me that the evidence was so overwhelming against both he and, I think he called him, Tad Long, who was the co-defendant, that he was an old man and he'd be going to prison anyway, so he might as well get up there and take the rap for Tad so Tad might get off.... He said, "I know I have to lie, but that's okay."

Jackson testified at the hearing that he had never considered committing perjury, but had wished to testify that he became

involved in the check forging scheme believing that it was a legitimate business opportunity, and that he had received no money from the scheme. He also stated, however, that he did not discuss this defense with his counsel and that he could not remember telling his counsel what he wished to testify to at trial. Jackson's counsel testified that Jackson had never indicated to him a desire to testify that he had not known the criminal nature of the enterprise.

A taped conversation between Jackson and a third party prior to Jackson's trial was also introduced at the evidentiary hearing. In this conversation, they discussed the possibility of killing a co-defendant who was to testify for the government.

The magistrate and the district court concluded that Jackson's counsel's testimony was more credible than Jackson's. This finding is not clearly erroneous. Jackson's counsel's version of the incident is more plausible on its face. Moreover, we believe that defendants interested in seeing the truth come out in their criminal trials do not ordinarily contemplate murdering potential witnesses. Additionally, the facts as stated by Jackson's counsel provided a reasonable factual basis for believing that Jackson would lie if he took the stand.

The record also indicates that Jackson's counsel's actions did not prevent Jackson from presenting truthful testimony. The trial court informed Jackson twice of his absolute right to testify and did not indicate that his counsel would be permitted to withdraw if Jackson took the stand. Jackson therefore did not have to choose between testifying and continuing to be represented by counsel. Jackson also was informed of his option to testify in a narrative form without questions by counsel. The court twice asked Jackson if he understood his right to testify and if he had any doubts about his decision not to. Jackson indicated that he understood his rights and that the decision not to testify was his. The magistrate and the district court therefore correctly determined that Jackson

knowingly and voluntarily waived his right to testify.

The Supreme Court stated in *Whiteside* that "[i]t is universally agreed that at a minimum the attorney's first duty when confronted with a proposal for perjurious testimony is to attempt to dissuade the client from the unlawful course of conduct." 475 U.S. at 169, 106 S.Ct. at 995. The magistrate found no direct evidence that counsel tried to dissuade Jackson from committing perjury, but concluded from the hearing transcripts that he had made such an effort before disclosing his beliefs to the trial court. This conclusion is not clearly erroneous. Jackson's counsel told the trial court that he had advised Jackson not to testify, and implicit in this statement is that he told Jackson not to testify falsely. The magistrate and the district court also correctly concluded that the trial court acted properly following the disclosure to limit any prejudice to Jackson.

### CONCLUSION

Accordingly, we affirm the order of the district court.