# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1451

_____

Jose Antonio Caban,

        Petitioner-Appellant,

v.

United States of America,

        Respondent-Appellee.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* District of Minnesota.
\*
\*
\*

_____

Submitted: August 20, 2001

Filed: February 28, 2002

_____

Before BYE, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

LAY, Circuit Judge.

Jose Antonio Caban appeals from the denial of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Caban asserts as grounds for relief ineffective assistance of trial counsel under the Sixth Amendment. He ascribes this alleged constitutional error to a conflict of interest purportedly arising from his trial counsel's relationship with a potential defense witness. This witness, Caban's former attorney, was not called at trial. According to Caban, this decision resulted from his attorney's divided loyalties and now entitles him to relief under § 2255. The

district court denied relief.[1] We reject Caban's arguments and affirm the denial of his § 2255 motion.

On July 1, 1997, Caban was indicted on one count of conspiracy to distribute and possess with intent to distribute cocaine and methamphetamine and two counts of use of a communication facility in committing a felony. Caban was initially represented by attorney A. Demetrius Clemons. At Caban's arraignment, it was determined that Clemons had a conflict of interest, as he also represented Samson Jegede, an indicted coconspirator. Subsequently, the presiding magistrate appointed attorney Michael McGlennen to represent Caban.

Clemons and McGlennen were no strangers. They shared a Minneapolis office. McGlennen was a godparent to Clemons' daughter. McGlennen also represented Clemons in disciplinary proceedings before the Minnesota Board of Professional Responsibility. At the time of Caban's trial, Clemons was on probation, and McGlennen continued to receive correspondence from the board on Clemons' behalf. However, McGlennen declined to characterize his representation of Clemons as an "active case" and conceded the relationship was not a traditional lawyer-client relationship at the time of Caban's trial.

Samson Jegede, who pleaded guilty to the charges against him, testified against Caban at trial. Jegede's testimony was damaging. He confirmed that two wiretapped phone conversations between Caban and Jegede referred, if cryptically, to their conspiracy to distribute drugs.[2] He testified that cash found in his residence upon his

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, presiding.

[2]As found by the district court: "In the first conversation, which was recorded on September 19, 1996, petitioner stated, 'I got all that ready, bro.' In the second conversation, which was recorded on December 4, 1996, petitioner stated, 'I got

arrest was money Caban paid to him on a drug debt. He also admitted lying to police in an earlier statement. He alleged that his attorney, Clemons, who was being paid by Caban at the time, encouraged him to falsely deny Caban's involvement in the conspiracy. He also stated that Clemons encouraged him to sign a false bill of sale for a boat purchased by Caban from Jegede. On appeal, Caban now alleges that the bill of sale refutes Jegede's testimony that Caban referred to a drug conspiracy in the wiretapped phone calls.[3]

The instant dispute arises from McGlennen's failure to call Clemons to refute Jegede's testimony that the bill of sale was false. According to Caban, Clemons could testify that Jegede's signature on the bill of sale was genuine. However, Caban argues, McGlennen's personal and professional relationship with Clemons prevented him from calling Clemons as a witness or offering the bill of sale as evidence.

McGlennen concedes the truth of these allegations. He testified at the evidentiary hearing on Caban's § 2255 motion that his personal feelings for Clemons caused him to refrain from calling Clemons because the prosecutor had promised a searching cross-examination into Clemons' ethical improprieties. McGlennen states he did not want to subject Clemons to embarrassment. He also stated he did not offer the bill of sale because, if he did, the prosecutor had opined it was his ethical obligation to refer Clemons to the Board of Professional Responsibility for his involvement in allegedly falsifying the document. McGlennen stated these conflicts caused him to provide ineffective assistance to Caban.

_____

nine.' Jegede testified that these statements referred to money petitioner was to pay for drugs." Order Denying Petitioner's § 2255 Motion (Dec. 18, 2000) at 4.

[3]Caban now asserts that his statement, "I got nine" refers to $9000 that Caban was to pay to Jegede for the boat in December, 1996. Jegede disputed this claim at trial, stating that Caban had paid $9000 of the $10,000 purchase price in August, 1996.

At the conclusion of the evidentiary hearing, the trial court found there was no conflict of interest. The court found McGlennen was not a credible witness and his failure to call Clemons or introduce the bill of sale had been the result of strategic considerations, not divided loyalty. Thus, the court denied Caban's request for post conviction relief.

**Analysis**

The Sixth Amendment guarantees defendants effective assistance of counsel. "The Sixth Amendment right to counsel has been interpreted to provide for representation that is 'free from conflicts of interest or divided loyalties.'" United States v. Reed, 179 F.3d 622, 624 (8th Cir. 1999) (quoting United States v. Acty, 77 F.3d 1054, 1056 (8th Cir. 1996)). However, the Supreme Court has placed the burden on defendants to prove violation of this guarantee. Strickland v. Washington, 466 U.S. 668 (1984), sets forth the general standard. First, the defendant must show that his attorney's performance was deficient, that it "fell below an objective standard of reasonableness." Id. at 688. Second, the defendant must show the inadequate representation prejudiced his defense by depriving him of a fair trial, defined as "a trial whose result is reliable." Id. at 687. This is a heavy burden.

In two cases prior to Strickland, however, the Court held the burden may be lighter for defendants who assert ineffective assistance of counsel because of a conflict of interest involving their attorney. Holloway v. Arkansas, 435 U.S. 475 (1980), addressed situations where the trial court is made aware of a potential conflict of interest before, during, or in some instances, after trial. Under those circumstances, the Court held the trial court has a duty to conduct a searching inquiry into the possibility of a constitutional violation arising from that conflict. See Wood v. Georgia, 450 U.S. 261, 272 n.18 (1981) (noting that Cuyler v. Sullivan, 446 U.S. 335, 347 (1980), "*mandates* a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict

-4-

exists'"). Failure to undertake this inquiry mandates an automatic reversal of any conviction "upon a showing of possible prejudice." Atley v. Ault, 191 F.3d 865, 873 (8th Cir. 1999); see also id. at 870 ("[W]hen a trial court fails to discharge its constitutional duty to determine whether the defendant is receiving assistance of counsel unburdened by a conflict of interest, prejudice is presumed and reversal of the conviction is automatic.") (citing Holloway). This per se rule of reversal applies regardless of the nature of the conflict. Atley, 191 F.3d at 870 n.4.

Cuyler v. Sullivan, 446 U.S. 335, addressed situations where the trial court is never made aware of the conflict of interest. The Court held, to establish a conflict of interest, the defendant must show that defense counsel "actively represented conflicting interests," id. at 350, and this conflict "adversely affected his lawyer's performance." Id. at 348. If the defendant can show the existence of these two factors, he is entitled to relief without having to prove actual prejudice. See Cuyler, 446 U.S. at 349-50. Rather, prejudice is presumed. Id. ("Once the Court concluded that [an attorney] had an actual conflict of interest, it refused 'to indulge in nice calculations as to the amount of prejudice' attributable to the conflict. The conflict itself demonstrated a denial of the 'right to have the effective assistance of counsel.' Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.") (quoting Glasser v. United States, 315 U.S. 60, 76 (1942)).

Since Cuyler, the Court has applied this "almost per se rule of prejudice" where a defendant raises the issue of a conflict of interest for the first time on appeal or in a motion for post-conviction relief. See, e.g., Strickland v. Washington, 466 U.S. 668, 692 (1984) (citing Cuyler); Wood, 450 U.S. at 272; Cuyler, 446 U.S. at 349-50 (citing Glasser, 315 U.S. at 76). However, the Court has never applied Cuyler's rule of presumed prejudice outside the context of multiple representation of codefendants or serial defendants. See, e.g., Nix v. Whiteside, 475 U.S. 157, 176 (1986); see also Beets v. Scott, 65 F.3d 1258, 1268 (5th Cir. 1995) ("Cuyler, a multiple representation

-5-

case, restated a rule developed in multiple representation cases.").

Consequently, the recent trend among the circuits has been to limit application of the "almost per se rule of prejudice." When facing cases where the trial court had no notice of a conflict, a number of our sister circuits have stated that not all conflicts of interest are well suited to resolution under the strict rule of Cuyler. See, e.g., Williams v. Calderon, 52 F.3d 1465, 1472-73 (9th Cir. 1995) (refusing to extend Cuyler treatment to an alleged conflict between a pro bono client and his attorney's financial interests); United States v. Zackson, 6 F.3d 911, 919-22 (2d Cir. 1993) (refusing to extend per se treatment to alleged conflict arising from attorney's time constraints). Another circuit has explicitly held that Strickland's requirement that the defendant prove actual prejudice is the proper standard in conflict situations other than those involving multiple representation of codefendants, the kind of situation addressed directly by Cuyler and its predecessor Glasser. See Beets, 65 F.3d at 1268-79 (holding that the "not quite per se rule of prejudice" does not apply when the conflict of interest at issue is a conflict between the client's interests and the attorney's own self-interest; the Cuyler test only applies in cases of multiple representation); United States v. Mays, 77 F.3d 906, 909 (6th Cir. 1996) (approving Beets).

We believe there is much to be said in favor of holding that Cuyler's rationale favoring the "almost per se rule of prejudice" does not apply outside the context of a conflict between codefendants or serial defendants. As Strickland explained, some finding of prejudice is an essential factor in proving ineffective assistance of counsel. Under Cuyler, loyalties divided between codefendants necessarily will infect the very core of at least one's defense, and prejudice should be presumed. However, the same impact will not be found automatically in other conflict situations. The latter may have such limited consequences that they will not invariably demonstrate prejudice and "a denial of the 'right to have the effective assistance of counsel.'" Cuyler, 446 U.S. at 349 (quoting Glasser, 315 U.S. at 76). In those cases, sound reasoning

supports requiring a defendant to prove actual prejudice under the Strickland standard in order to meet the constitutional standard for ineffective assistance of counsel.

The Sixth Amendment right to counsel exists in order to protect the fundamental right to a fair trial. Strickland, 466 U.S. at 684. Although a competent and loyal attorney is an important part of the process by which we guarantee fairness, the participation of such an attorney is not itself the baseline measure of fairness. Rather, the Strickland Court held the true measure of fairness is reliability. Id. at 687. A fair trial is one where we can have confidence the correct outcome ultimately was reached. The Court imposed the "actual prejudice" requirement to guarantee that reliability remained the central focus. Cuyler does not reflect a change in that calculation. Rather it held, in a conflict situation involving multiple representation of codefendants, the probability of an unreliable outcome was so high that defendants need not prove actual prejudice.

As noted in Beets, "[a conflict's] consequences on the quality of representation range from wholly benign to devastating." Beets, 65 F.3d at 1271. The court held that applying a single, inflexible rule to a "spectrum of potential ethical problems" is a "draconian remedy." Id. Likewise, it noted that "[n]ot all conflicts of interest that affect the attorney's 'duty of loyalty' have the same consequences, and they are not all suited to Cuyler's stringent rule." Id. at 1269. This makes sense. The real possibility of inconsequential errors in conflict situations other than multiple representation precludes application of the Cuyler presumption. In cases of a single lawyer representing codefendants, manifest injustice is so likely it is correct to presume prejudice rather than indulge in "nice calculations," see Strickland, 466 U.S. at 692; Cuyler, 446 U.S. at 349, when a defendant can satisfy Cuyler's requirements. However, as a factual matter, not every other conflict will result in a complete miscarriage of justice. In those cases, only the Strickland rule, which requires a showing of actual prejudice, can square conflict analysis with the need to show real injustice to justify relief under the constitutional standard for ineffective assistance

of trial counsel. See Beets, 65 F.3d at 1272 ("A blurring of the Strickland standard is highly undesirable. As a result of the uncertain boundary between Cuyler and Strickland, the focus of Sixth Amendment claims would tend to shift mischievously from the overall fairness of the criminal proceedings–the goal of 'prejudice' analysis–to slurs on counsel's integrity–the 'conflict' analysis. Confining Cuyler to multiple representation claims poses no similar threats to Strickland.").

Notwithstanding this reasoning, however, this court has stated that Cuyler applies to all conflict of interest cases, not merely cases involving representation of multiple or serial defendants. See Koste v. Dormire, 260 F.3d 872, 879 (8th Cir. 2001); Atley v. Ault, 191 F.3d 865, 870 n.4 (8th Cir. 1999).

However, we believe these statements are dicta. Atley and Koste, as well as United States v. Horton, 845 F.2d 1414 (7th Cir. 1988), cited therein, involved instances where the trial court was put on notice of a conflict. Thus, our earlier statements are both correct and limited. When given notice of a conflict of interest, the trial court is obliged to conduct an inquiry regardless of the nature of the conflict. See Wood, 450 U.S. at 272 n.18; Holloway, 435 U.S. at 489. However, the Court has never extended Cuyler's rule pertaining to "non-notice" cases beyond the limiting context of multiple or serial representation. See Beets, 65 F.3d at 1266-68 (analyzing Supreme Court cases following Cuyler). We believe our own precedent to be consistent with the Court's approach; Atley and Koste merely restate the undisputed rule for cases where the trial court was put on notice of a conflict. Those cases do not limit our analysis because here the defendant failed to notify the trial court of a conflict and only asserts the claim for the first time in a motion for post-conviction relief.

Fortunately, we need not create even the appearance of a conflict with our prior statement because we need not choose between the Strickland and Cuyler standards in the present case. We hold that Caban would lose under either standard and, thus,

refrain from adopting either standard as the law of this circuit for non-notice conflict cases not involving multiple or serial representation.

## A. Representation of Conflicting Interests

In the present case, it is clear McGlennen concurrently represented two clients. Representation of Caban is undisputed. As for Clemons, it appears from the record that McGlennen was actively representing Clemons before the ethics board at the time of the trial. The defense offered evidence that McGlennen was corresponding with the board on Clemons' behalf. This would be consistent with the most recent Minnesota disciplinary decisions regarding Clemons, which put him on probation subject to supervision by a practicing attorney. See In re Disciplinary Action Against Clemons, 530 N.W.2d 537 (Minn. 1995); In re Disciplinary Action Against Clemons, 549 N.W.2d 93 (Minn. 1996). That attorney was directed to file quarterly reports on Clemons' progress. From the record, it appears that McGlennen was that attorney.[4]

It also is apparent that these two clients' interests conflicted. We note the trial court tentatively found no conflict existed. However, this finding is contradicted by McGlennen's testimony in the § 2255 proceeding, apparently given against his self-interest, that he was conflicted because of his past representation of, and friendship with, Clemons. Certainly, the trial court as finder of fact need not credit all testimony equally, and generally we will defer to trial courts' findings as to credibility of witnesses. See United States v. Reed, 179 F.3d 622, 625 (8th Cir. 1999). However, the unique circumstances of this case necessitate a further inquiry on our part.

---

[4] As noted above, McGlennen testified his work for Clemons was not an "active case" and theirs was not the typical attorney-client relationship. However, that distinction does not preclude a finding of a conflict of interests. See Dawan v. Lockhart, 31 F.3d 718, 721 (8th Cir. 1994) (noting that an attorney can be subject to an actual conflict of interests between a current client and a former client).

In this case there was a conflict in two respects. First, there was the conflict between Caban and Clemons. If McGlennen put Clemons on the stand to testify to the bill of sale on Caban's behalf, the prosecutor stated that he would be obliged to turn the matter over to the ethics board on his information that the bill of sale was phony. Assuming the bill to be disputed evidence,[5] the conflict is clear. McGlennen knew it was against Clemons' interests to testify and be subject to embarrassing cross-examination and, possibly, referral to the ethics board.

There also was the conflict between Caban and McGlennen arising from McGlennen's personal feelings and self-interest in protecting Clemons. McGlennen clearly had a close personal relationship with Clemons. He testified under oath and to his own potential detriment that he did not want to subject his friend to an embarrassing cross-examination. Even if this was not the typical conflict situation, i.e. a single lawyer representing multiple defendants in a mutual prosecution, the division of loyalties is apparent.

This conflict satisfies Cuyler's first requirement. 446 U.S. at 350. We also believe it satisfies Strickland's requirement that the defendant show deficient performance, 466 U.S. at 688; it requires no complex analysis to recognize that an attorney who functions under a conflict of interest generally acts unreasonably.

---

[5]The Government argues that no conflict can exist because the bill of sale is fraudulent. Thus, it argues, McGlennen could not have offered it as evidence under any circumstances. Were we to assume fraud, this contention might have merit. Not only would counsel have been precluded from offering the evidence, see Jackson v. United States, 928 F.2d 245, 248 (8th Cir. 1991), but seemingly Clemons' and Caban's interests would line up behind foregoing the evidence. Clemons would have an interest in not perjuring himself, and Caban would have an interest in not tainting his defense with perjury and false evidence. However, the trial court seemed unwilling to find that the bill of sale actually had been falsified, and we are reluctant to do so when it did not. In any event, it is unnecessary for us to address this question in great detail, as subsequent analysis disposes of this case.

-10-

Divided loyalties violate both Sixth Amendment requirements, see Dawan v. Lockhart, 31 F.3d at 720-21, and well accepted rules of professional responsibility. See ABA Model Rule of Professional Conduct 1.7(b) ("A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. . . ."); Minnesota Rule of Professional Responsibility 1.7, cmt. ("Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests."). To the extent Caban can show McGlennen engaged in a conflict of interest without his consent, he satisfies Strickland's "deficient performance" prong.

## B. Effect of the Conflict

Notwithstanding Caban's satisfaction of the first prong of both the Cuyler and Strickland tests, we hold he would fail under the second prong of either. The district court, in its order, and the Government, in its brief, provide numerous reasons why McGlennen's refusal to call Clemons as a witness did not prejudice the outcome of Caban's case. First, assuming Clemons could have testified at trial, his credibility would have been challenged by cross-examination regarding his prior ethical improprieties. Persuasive evidence indicated that the bill of sale was created after the fact and Jegede signed it when Clemons visited him in jail on the conspiracy charges, as well as while Clemons was practicing under his own conflict of interest between Caban and Jegede. Moreover, McGlennen's testimony indicates that Clemons' knowledge likely was second hand. This would have made his testimony inadmissible hearsay at trial.

Furthermore, the bill of sale was of doubtful validity. It was difficult to read, unsigned by Caban, and appeared to have been altered. Thus, even at best, Clemons

only would have been able to establish the genuineness of the seller's signature on a document otherwise irregular on its face.[6]

Finally, and perhaps most importantly, even if the bill of sale were admissible evidence, it contradicted Caban's testimony about the circumstances of the sale of the boat. Caban testified he owed $9000 on the boat in December and he was referring to that amount in the recorded telephone call. The bill of sale, however, appeared to record a $5000 down payment in August with $5000 owing, to be paid in $250 monthly installments.

We are convinced upon the evidence presented that the outcome of the trial would have been the same regardless whether McGlennen operated under a conflict of interest. Caban's inability to show any adverse effect on the outcome of the trial arising from McGlennen's conflict persuades us that the outcome of Caban's trial was reliable. Therefore, Caban could not prove actual prejudice as required by Strickland for post-conviction relief.

Likewise, we believe McGlennen's conflict did not adversely affect his representation of Caban as required for relief under Cuyler. Stated alternatively, McGlennen's conflict made no difference to his trial strategy or otherwise to the quality of his performance as Caban's attorney. See Simmons v. Lockhart, 915 F.2d 372, 378 (8th Cir. 1990) ("[The defendant] must show, in addition, that this dual representation made some difference, and that this difference was adverse to his defense."). The evidence showing an absence of actual prejudice also shows that a

---

[6]It should be noted that, although Clemons was available at the evidentiary hearing to testify as to what his trial testimony would have been, Caban did not call him. At no point has Caban offered to prove what Clemons would have testified to or how that testimony would have aided him at trial. For this reason alone it would be very difficult to hold that Caban has satisfied his burden to prove Clemons' absence as a witness prejudiced his defense.

reasonable attorney in McGlennen's position would not have called Clemons or introduced the bill of sale. Indeed, the district court expressly stated that a reasonable attorney would not have called Clemons at all. We agree with this conclusion and believe that if a reasonable attorney would have adopted the same trial strategy absent a conflict, Caban cannot show McGlennen's performance was *adversely* affected by that conflict. Consequently, Caban would fail under <u>Cuyler</u>'s second requirement were that test applied.

Under the circumstances, it is difficult to believe Clemons' testimony would have provided any actual benefit to Caban's defense. Even McGlennen's testimony indicates only a hypothetical benefit. The remote likelihood that the testimony at issue would have made a difference in Caban's defense falls short of satisfying defendant's burden to show "actual prejudice" under <u>Strickland</u>. The same evidence demonstrates that the quality of McGlennen's performance was not objectively undermined by the conflict; thus Caban cannot show "adverse impact" as required by <u>Cuyler</u>. Therefore, we hold the outcome of Caban's trial was reliable, and consequently, he falls short of showing ineffective assistance of counsel in violation of the Sixth Amendment as required for success on his § 2255 motion. Relief is denied and the district court's order is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-