Jerry Lee BERRY, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 01-1796.

United States Court of Appeals,
Eighth Circuit.

Submitted: April 19, 2002.

Filed: June 4, 2002.

Edward M. Mansfield, argued, Des Moines, IA, for appellant.

Lester Alan Paff, argued, Des Moines, IA, for appellee.

Before: HANSEN, Chief Judge, MCMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The government charged Jerry Berry with conspiring to distribute crack cocaine in violation of 21 U.S.C. § 846. Mr. Berry pleaded guilty, and the district court [1] sentenced him to 188 months in prison. Mr. Berry then filed a motion under 28 U.S.C. § 2255 to set his conviction aside because his counsel's prior representation of potential witnesses created a conflict of interest that prevented counsel from providing effective assistance when Mr. Berry pleaded guilty and at his sentencing. The district court denied Mr. Berry's motion, and Mr. Berry appealed. We affirm.

## I.

The sixth amendment provides that a criminal defendant shall have the right to "the Assistance of Counsel for his defence." Generally, a defendant claiming a violation of the sixth amendment must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is not required, however, if the defendant can show that his or her attorney had an actual conflict of interest. *See Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Rather, the appropriate question is whether a conflict of interest "adversely affect[ed]" the adequacy of a defendant's representation, *Caban v. United States,* 281 F.3d 778, 786 (8th Cir. 2002), or whether the "conflict adversely

affected the voluntary nature of the guilty plea entered," *Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.1987), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

We have held that the "mere fact that a trial lawyer had previously represented a prosecution witness" is not sufficient for a showing of an actual conflict; the conflict must be "demonstrable," not merely abstract or a theoretical possibility, *United States v. Flynn,* 87 F.3d 996, 1001 (8th Cir.1996). In this case, the district court found that there was no actual conflict because Mr. Berry never went to trial, and his attorney, Ronald Wheeler, never had to cross-examine Freddie Clark (Freddie) or Perry Clark (Perry), his former clients.

Although the matter is not entirely free from doubt, we believe that Mr. Wheeler had an "actual conflict" in this case because he had a demonstrable interest in avoiding taking Mr. Berry's case to trial. *See, e.g. Lace v. United States,* 736 F.2d 48, 50 (2d Cir.1984) (*per curiam*). Mr. Wheeler explicitly told Mr. Berry that he could not take the case to trial, and this statement, in our judgement, is evidence that he had an actual conflict of interest in advising Mr. Berry whether or not he should plead guilty.

We believe nevertheless that it would be unreasonable to conclude on this record that Mr. Wheeler's conflict adversely affected his representation of Mr. Berry during the time that Mr. Berry was deciding whether to enter a plea of guilty. Mr. Wheeler's advice to Mr. Berry that he would face overwhelming odds at trial and hence should plead guilty was solidly grounded because it was based on Mr. Wheeler's discussions with the assistant

---

1. The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

United States attorney, who told him that fifteen individuals were prepared to testify against Mr. Berry. As for Mr. Berry's complaint that Mr. Wheeler did not share with him the details of Freddie and Perry's prospective testimony, no other attorney would even have had access to this privileged information. In short, we are convinced that Mr. Wheeler's conflict made no difference to the quality of his performance as Mr. Berry's attorney during the guilt phase. *Cf. Caban,* 281 F.3d at 785–86. It is our view that, absent a conflict, not only would Mr. Berry in all likelihood have pleaded guilty, which means that there was no prejudice, but that a reasonable attorney would have given Mr. Berry the very same advice, which means that there was no adverse effect. *See id; cf. Thomas,* 818 F.2d at 483.

■ There is also insufficient evidence that Mr. Wheeler's conflict adversely affected the voluntariness of Mr. Berry's plea. We think it important that Mr. Wheeler did not apply any significant pressure on Mr. Berry. It is true that Mr. Wheeler testified at the evidentiary hearing on Mr. Berry's motion that informing Mr. Berry of his inability to go to trial may "possibly have" created pressure from "the standpoint that if he wanted me to remain on the case he would have to agree to a plea agreement." But any implicit pressure is, in our judgment, diluted because Mr. Berry was free to request the court to appoint another attorney to represent him at trial, there were no significant impediments to his doing so, and Mr. Wheeler's advice to plead guilty was reasonable.

■ Finally, Mr. Berry claims that the district court had a duty to inquire into the propriety of Mr. Wheeler's representation because it reasonably should have known that Mr. Wheeler had a conflict of interest. *See Wood v. Georgia,* 450 U.S. 261, 272–73, 101 S.Ct. 1097, 67 L.Ed.2d 220

(1981). While the district court acknowledged that it would have been better if it had conducted an inquiry to ensure Mr. Berry knew about the conflicts, we agree with its conclusion that the conflict was not "sufficiently apparent" to impose upon it a duty to do so. Whereas in *Wood,* 450 U.S. at 265 n. 5, 101 S.Ct. 1097, the state's solicitor alerted the court of a possible conflict, no one alerted the court of any conflict in Mr. Berry's case. We acknowledge that the court had a kind of notice of the conflict through events that occurred six months before Mr. Berry's plea, when, in a different case, Mr. Wheeler had disclosed that he represented Freddie and Perry in previous criminal proceedings. But we do not think that the court can reasonably be charged with a duty to keep track of the conflicts of every practitioner appearing before it. In any case, even if the court had an affirmative duty to inquire, which we do not think it did, its failure to do so does not make for an automatic reversal. *See Mickens v. Taylor,* —— U.S. ——, 122 S.Ct. 1237, 1243–45, 152 L.Ed.2d 291 (2002). The relevant question remains whether the conflict had an "adverse effect" on Mr. Wheeler's representation, and, as we have already explained, it did not.

## II.

■ Mr. Berry also claims that Mr. Wheeler had an "actual conflict" that adversely affected his representation during sentencing. We agree with Mr. Berry that Mr. Wheeler's demonstrable interest in avoiding a sentencing hearing because of the possibility that Freddie and Perry might testify there requires a finding that Mr. Wheeler had an actual conflict.

■ We do not believe, however, that this record could support a finding that Mr. Wheeler's conflict adversely affected

his representation of Mr. Berry during sentencing. According to the original pre-sentence investigation report, which was based largely on Lydia Merrett's grand jury testimony, Mr. Berry was responsible for 1.16 kilograms of crack, for sentencing purposes, and he thus faced the prospect of a sentencing range of 235 months to 293 months. Mr. Wheeler advised him to ac-knowledge responsibility for 150 grams to 500 grams of crack, which lowered the sentencing range to 188 to 235 months. We believe that Mr. Wheeler's advice that Mr. Berry should accept the proffered ar-rangement was more than reasonable, and evidently unaffected by any ulterior con-sideration.

Mr. Berry challenges that inference by pointing out that he privately told Mr. Wheeler that Ms. Merrett was not credi-ble. But the district court found on a suffi-cient record that Mr. Wheeler in fact raised Mr. Berry's objections during his negotiations with the prosecutor, and we therefore believe that in this aspect of the case Mr. Wheeler did not in any way com-promise his client's interests.

Mr. Berry also claims that his testimony at the evidentiary hearing that "he always had a problem with the grams," supports a conclusion that Mr. Wheeler's advice was unreasonable. But this testimony gives us no indication of what Mr. Berry told Mr. Wheeler during the negotiations or how strong the case against Mr. Berry actually was. We recognize that the amount of drugs attributable to Mr. Berry in the proffered agreement was, ultimately, based in large part upon information that Freddie and Perry were willing to provide if called to the stand. If there were any evidence that these two witnesses were not credible or even that Mr. Berry had ex-pressed doubts about their credibility that Mr. Wheeler ignored, then Mr. Berry might have had an argument that Mr. Wheeler's belief about the strength of the government's case was unreasonable. Ab-sent such evidence, however, we conclude that Mr. Berry has failed to show that Mr. Wheeler's conflict adversely affected his representation during sentencing.

### III.

In sum, we believe that Mr. Wheeler's conflict of interests did not adversely af-fect the adequacy of his representation of Mr. Berry. We therefore affirm the district court's order denying the motion to vacate Mr. Berry's conviction and sentence.

David J. GORMAN, d/b/a
Cashbackrealty.com,
Appellant,

v.

AMERITRADE HOLDING CORPO-
RATION and Freetrade.com,
Inc., Appellees.

No. 01–7085.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 14, 2002.

Decided June 14, 2002.

John M. Shoreman argued the cause and filed the briefs for appellant.

Brian D. Craig argued the cause for appellees. With him on the brief was Robert S. Brennen.

Before: HENDERSON and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

GARLAND, Circuit Judge:

■ In this case, we consider whether the courts of the District of Columbia may assert general jurisdiction over a defendant that is "doing business" in the District through the medium of the Internet. We hold that they may, although we ultimately affirm dismissal of the complaint because service of process on the defendant was insufficient.

## I

Plaintiff David Gorman is the sole proprietor of Cashbackrealty.com, a real estate broker with its principal place of business in McLean, Virginia. Defendant Ameritrade Holding Corporation is a securities broker-dealer licensed in the District of Columbia with its principal place of business in Omaha, Nebraska. Ameritrade provides online brokerage services through its Internet site to individuals across the country, including District residents. In November 1999, Ameritrade acquired Freetrade.com, Inc., as well as its Internet domain name, "Freetrade.com." Like Ameritrade, defendant Freetrade has its principal place of business in Omaha. Gorman alleges that he had an agreement with the prior owner of Freetrade, under which Cashbackrealty.com was entitled to a front-page link on the Freetrade.com website. According to Gorman, although Ameritrade assumed the obligations of this agreement when it acquired the Freetrade.com domain name, it refused to provide a front-page link for Cashbackrealty.com.

■ On June 2, 2000, Gorman filed a complaint in the United States District Court for the District of Columbia, alleging that Ameritrade and Freetrade (hereinafter referred to collectively as "Ameritrade") were in breach of contract for refusing to honor the front-page-link agreement. Without permitting discovery, the district court dismissed Gorman's complaint for lack of personal jur-

isdiction and insufficiency of service of process. With respect to personal jurisdiction, the court held that a "company that acts to encourage or maximize the use by District of Columbia residents of its website does not establish the necessary 'minimum contacts' with this forum through Internet accessibility," and does not "operate so continuously and substantially within [the District] that it is fair to allow anyone to sue the enterprise in [the District] on any claim, without regard to where the claim arose." *Gorman v. Ameritrade Holding Corp.*, No. 00–1259, Mem. Op. at 3 (D.D.C. Mar. 30, 2001) (internal quotation marks omitted). The court further held that Gorman's service of his complaint upon the Securities Director of the District of Columbia was insufficient under District of Columbia law. *Id.* at 2–3. We review the district court's grant of Ameritrade's motion to dismiss de novo, *see Second Amendment Found. v. United States Conference of Mayors*, 274 F.3d 521, 523 (D.C.Cir. 2001), and we consider its two grounds for dismissal in Parts II and III below.

## II

■ The district court has subject matter jurisdiction in this breach of contract action because of the diversity of citizenship of the parties. 28 U.S.C. § 1332(a). In a diversity case, the court's personal jurisdiction over nonresident defendants depends upon state law, here the law of the District of Columbia, the application of which is subject to the constraints of constitutional due process. *See Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir.1987); 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE

§ 1068.1, at 592 & n.2 (3d ed. 2002). The requirements of due process "are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) (additional internal quotation marks omitted).

■ Under the District of Columbia's long-arm statute, local courts may exercise so-called "specific jurisdiction" over a person for claims that arise from the person's "transacting any business" in the District. D.C.Code § 13–423(a)(1). *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 & n. 15, 105 S.Ct. 2174, 2182–83 & n. 15, 85 L.Ed.2d 528 (1985); *Crane*, 814 F.2d at 763. However, because Gorman's breach of contract claim against Ameritrade does not arise out of any business transacted between the parties in the District, this font of jurisdiction is unavailable.

■ District of Columbia law also permits courts to exercise "general jurisdiction" over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is "doing business" in the District. *See* D.C.Code § 13–334(a); *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C.1981); *see also Helicopteros*, 466 U.S. at 415 n. 9, 104 S.Ct. at 1872 n. 9; *Crane*, 814 F.2d at 763.[1] Under the Due Process

1. D.C.Code § 13–334(a) provides:
   In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, where he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

Clause, such general jurisdiction over a foreign corporation is only permissible if the defendant's business contacts with the forum district are "continuous and systematic." *Helicopteros,* 466 U.S. at 415, 104 S.Ct. at 1872 (quoting *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952)); *see El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 675 (D.C.Cir.1996); *see also Crane,* 814 F.2d at 763 (describing the required contacts for general jurisdiction as "continuous and substantial"); *Hughes v. A.H. Robins Co.,* 490 A.2d 1140, 1142, 1149 (D.C.1985) (same).[2] The District of Columbia Court of Appeals has indicated that the reach of "doing business" jurisdiction under § 13–334(a) is coextensive with the reach of constitutional due process. *See Hughes,* 490 A.2d at 1148 ("[W]e may find jurisdiction if [the defendant] ... has 'been carrying on in [the District] a continuous and systematic, but limited, part of its general business.'" (quoting *Perkins,* 342 U.S. at 438, 72 S.Ct. at 414)); *see also Everett v. Nissan Motor Corp.,* 628 A.2d 106, 108 (D.C.1993).

In his pleadings below, Gorman contended that Ameritrade "sells securities and provides other online brokerage services to residents of the District of Columbia on a continuous basis," and is therefore "continuously doing business in the District of Columbia." Pl.'s Opp'n to Mot. to Dismiss at 1–2. He further argued that he was "[a]t the very least ... entitled to jurisdictional discovery to determine the exact nature of Ameritrade's contacts with the District." *Id.* at 5. And although "[a]s a general matter, discovery ... should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction," *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C.Cir.1991), the district court granted Ameritrade's motion to dismiss without permitting the plaintiff to undertake discovery.

◼ Ameritrade contends that Gorman was not entitled to discovery because there are no factual circumstances under which the district court could have asserted personal jurisdiction over Ameritrade. The defendant concedes that it engages in "electronic transactions" with District residents, and that "Ameritrade undoubtedly derives revenue from those customers." Reply Mem. in Supp. of Defs.' Mot. to Dismiss at 6. But Ameritrade maintains that those transactions do not occur in the District of Columbia. Rather, the firm declares, Ameritrade's business is conducted "in the borderless environment of cyberspace." Appellees' Br. at 5.

◼ "Cyberspace," however, is not some mystical incantation capable of warding off the jurisdiction of courts built from bricks and mortar. Just as our traditional notions of personal jurisdiction have prov-

---

Although on its face § 13–334(a) appears only to specify proper methods of service, the District of Columbia Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a foreign corporation doing business in the District. *AMAF Int'l Corp.,* 428 A.2d at 850; *see El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 673 n. 7 (D.C.Cir.1996).