# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1755

_____

Robert E. Wemark,                                    *
                                                     *
          Appellant,                                 *
                                                     *
     v.                                              *     Appeal from the United States
                                                     *     District Court for the
State of Iowa, sub nominee John                      *     Northern District of Iowa.
Mathes, Warden, Newton                               *
Correctional Facility,                               *
                                                     *
          Appellee.                                  *

_____

Submitted:  December 9, 2002

Filed:  March 17, 2003

_____

Before WOLLMAN, HEANEY, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

     Robert E. Wemark appeals the district court's[1] judgment denying his petition
for writ of habeas corpus.  We affirm.

_____

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Court
for the Northern District of Iowa.

# I. Background

On August 18, 1993, Robert Wemark was convicted of first-degree murder for fatally stabbing his estranged wife. Wemark's conviction and sentence of life imprisonment were affirmed on appeal. State v. Wemark, No. 4-491/93-1276 (Iowa Ct. App. Jan. 23, 1995).

On August 2, 1996, Wemark filed an application for post-conviction relief in Iowa district court, alleging, inter alia, ineffective assistance of trial counsel. The district court denied the application, and Wemark appealed. The Iowa Supreme Court explained the factual basis for Wemark's ineffective-assistance claim:

> Wemark was . . . scheduled to be examined by Dr. Michael Taylor, a medical expert employed by the State after Wemark filed his diminished responsibility defense. Before the scheduled interview, Wemark disclosed the location of the knife he used to stab his wife to his counsel. He had placed the knife in a pile of automotive parts under the basement steps of the house, which law enforcement authorities failed to detect during their extensive search of the home.
>
> Defense counsel were immediately concerned they had an ethical obligation to disclose the location of the knife to the prosecution. They considered nondisclosure to be the same as concealment and an interference with police investigation. . . . [D]efense counsel concluded they had three options to pursue once Wemark informed them of the location of the knife. The first option was to wait for the State to search the house again and find the knife. Yet, defense counsel believed it was unlikely law enforcement would search the home a second time. The second option was to have Wemark inform Dr. Taylor of the location of the knife during the scheduled interview. Defense counsel knew Dr. Taylor would then notify the prosecutor. The third option was to engage the services of an attorney to relay the location of the knife to the prosecutor without disclosing the source of the information.

. . . .

Defense counsel informed Wemark of the ethical dilemma and the three options. They urged him to keep the appointment with Dr. Taylor and to disclose the location of the knife during the course of the examination.

Wemark was subsequently interviewed by Dr. Taylor. He informed Dr. Taylor of the location of the knife. Dr. Taylor then relayed the information to the prosecutor and the knife was removed in a second search of the home. The knife was introduced into evidence at trial and displayed by the prosecutor in closing argument. The State also conducted forensic tests on the knife prior to trial and was unable to find any fingerprints but did find traces of blood consistent with characteristics of Melissa[] [Wemark's] blood. This evidence was introduced at trial, as well as the location of the knife. Wemark claims the location of the knife should not have been disclosed, and the ability of the State to introduce it into evidence at trial prejudiced his defense.

Wemark v. State, 602 N.W.2d 810, 813 (Iowa 1999).

In analyzing Wemark's claim, the Iowa Supreme Court applied a two-pronged test: "To establish . . . ineffective assistance of counsel[,] . . . the applicant must show that '(1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom.'" Id. at 814 (quoting State v. Miles, 344 N.W.2d 231, 233-34 (Iowa 1984)). Citing Strickland v. Washington, 466 U.S. 668, 688 (1984), the court noted that "[t]he test of ineffective assistance of counsel focuses on whether the performance by counsel was reasonably effective." Id. The court determined that although Wemark had satisfied the first prong of the ineffective-assistance inquiry, he had failed to demonstrate prejudice. Id. at 817-18. Thus, the court concluded, Wemark's claim did not entitle him to post-conviction relief.

On April 14, 2000, Wemark filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, again alleging ineffective assistance of trial counsel. Relying

on <u>Cuyler v. Sullivan</u>, 446 U.S. 335 (1980), Wemark argued that because his counsel had been burdened by an "actual conflict," he was entitled to habeas relief without having to demonstrate prejudice. <u>See</u> <u>Cuyler</u>, 446 U.S. at 349-50; <u>see also</u> <u>Strickland</u>, 446 U.S. at 692 ("Prejudice is presumed . . . if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" (quoting <u>Cuyler</u>, 446 U.S. at 350, 348)). The magistrate judge,[2] however, concluded that Wemark had failed to raise a "presumption of prejudice" argument in his state post-conviction proceedings and had therefore procedurally defaulted the issue. The district court agreed and denied Wemark's petition. In doing so, the district court issued a certificate of appealability on Wemark's "claim of presumed prejudice."

## II. Analysis

"To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts," <u>Anderson v. Groose</u>, 106 F.3d 242, 245 (8th Cir. 1997), thereby affording such courts a "'fair opportunity' to apply controlling legal principles to the facts bearing upon [the] claim," <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 276-77 (1971)). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." <u>Joubert v. Hopkins</u>, 75 F.3d 1232, 1240 (8th Cir. 1996) (citations omitted); <u>cf.</u> <u>Bracken v. Dormire</u>, 247 F.3d 699, 703 (8th Cir.) ("We are also more apt to deem a claim preserved if the claim actually raised in the habeas petition shares the same legal analysis and standards as the different claim relied upon by the District Court, as here, or in the appeal." (citing <u>Frey v. Schuetzle</u>, 78 F.3d 359, 361 (8th Cir. 1996)), <u>cert. denied</u>, 534 U.S. 934 (2001).

---

[2]The Honorable Paul A. Zoss, United States Magistrate Judge for the Northern District of Iowa.

Before reaching the issue of "fair presentment," we note that <u>Cuyler v. Sullivan</u>, the case on which Wemark relies, arose in the context of counsel representing multiple defendants. See <u>Cuyler</u>, 446 U.S. at 337. We have not yet clarified whether <u>Cuyler</u>'s presumed prejudice analysis extends beyond such circumstances to all conflict of interest cases. See <u>Atley v. Ault</u>, 191 F.3d 865, 870 n.4 (8th Cir. 1999) (indicating that <u>Cuyler</u>'s rule is not limited to joint representation situations); <u>Caban v. United States</u>, 281 F.3d 778, 783-84 (8th Cir. 2002) (characterizing the relevant language from <u>Atley</u> as dictum, but avoiding "even the appearance of a conflict" by concluding that the petitioner would lose under either the <u>Strickland</u> or <u>Cuyler</u> standard); see also <u>United States v. Young</u>, 315 F.3d 911, 914 n.5 (8th Cir. 2003) ("[W]here the alleged conflict involves ethical issues other than multiple or serial representation, this Circuit has held that <u>Strickland</u> is still the appropriate standard." (citing <u>Caban</u>, 281 F.3d at 783-84) (additional citation omitted)). The Supreme Court has recognized that some appellate courts have extended <u>Cuyler</u> "'unblinkingly' to 'all kinds of alleged attorney ethical conflicts,'" but has chosen not to address whether such extensions were proper. See <u>Mickens v. Taylor</u>, 535 U.S. 162, 174-76 (2002) (quoting <u>Beets v. Scott</u>, 65 F.3d 1258, 1266 (5th Cir. 1995) (en banc)). Thus, whether <u>Cuyler</u> should be extended remains "an open question." <u>Id.</u> at 176.

After reviewing Wemark's briefs to the Iowa Supreme Court in his post-conviction action, we agree that he failed to satisfy the "fair presentment" requirement. Wemark did not cite the <u>Cuyler</u> case or argue its rule of presumed prejudice. Instead, Wemark directed the court to the <u>Strickland</u> inquiry and its requirement of actual prejudice. He expressly identified <u>Strickland</u> as the "governing standard." Pointing to the fact that the <u>Strickland</u> Court discussed the <u>Cuyler</u> decision, Wemark now contends that "[t]he presumption of prejudice law and analysis are an inherent part of the <u>Strickland</u> test for ineffective assistance of counsel." <u>Strickland</u>, however, makes clear that in those circumstances where "counsel is burdened by an actual conflict of interest," a different inquiry must be undertaken in

reviewing an ineffective-assistance claim.  Strickland, 466 U.S. at 692.  Given that neither the Supreme Court nor this court has resolved whether Cuyler extends to all conflict of interest situations, we are not persuaded that Wemark's citation to Strickland afforded Iowa's courts a "fair opportunity" to consider his presumed prejudice theory.

Wemark's failure to raise his presumed prejudice theory in state court "implicates the requirements in habeas of exhaustion and procedural default."  Gray v. Netherland, 518 U.S. 152, 161 (1996).  The United States Supreme Court has explained the relationship between these two requirements:

> Title 28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State."  Because "[t]his requirement . . . refers only to remedies still available at the time of the federal petition," it is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law."  However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.

Id. at 161-62 (internal citations omitted) (brackets in original).

We therefore turn to the question of whether Iowa law would prevent Wemark from raising a presumed prejudice theory in state court.  McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997).  Wemark has not suggested that Iowa's courts would entertain his presumed prejudice claim, and our research indicates that this theory of relief has been defaulted.  Iowa law requires post-conviction applicants to raise all available grounds for relief in their original, supplemental, or amended applications. Iowa Code § 822.8 (1994).  "Any ground . . . not raised . . . may not be the basis for a subsequent application" unless the court finds "sufficient reason" to justify the

-6-

omission. Id.[3] Although Wemark does not specifically identify a "sufficient reason," he does contend that the novelty of the issue excuses his failure to raise the presumed prejudice argument in Iowa's state courts. We disagree. The Supreme Court has recognized "that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." Reed v. Ross, 468 U.S. 1, 16 (1984). Nevertheless, "[i]f the tools were available for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Frizzell v. Hopkins, 87 F.3d 1019, 1021 (8th Cir. 1996) (internal quotation marks and citations omitted).

Cuyler was decided in 1980, well before Wemark filed his state application for post-conviction relief. Thus, the legal tools needed to construct a presumed prejudice argument were certainly available at the time of Wemark's state post-conviction proceedings. Although Wemark suggests otherwise, our uncertainty as to whether Cuyler should be extended outside the multiple or serial representation context does not render his theory "so novel that its legal basis [was] not reasonably available" during his state post-conviction action. Reed, 486 U.S. at 16. We therefore conclude that Wemark has not demonstrated either a "sufficient reason" or cause for his failure to raise a presumed prejudice theory in Iowa's state courts. Nor has Wemark demonstrated that our failure to consider his claims would result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims

---

[3]We also note that Iowa law requires post-conviction applications to be filed within three years "from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued," unless "a ground of fact or law [exists] that could not have been raised within the applicable time period." Iowa Code § 822.3 (1994).

in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").  Accordingly, we conclude that because Wemark did not "fairly present" a presumed prejudice theory to the Iowa Supreme Court, we are barred from reviewing the merits of his ineffective-assistance claim.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.