# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3603

_____

Lewis J. Atley,                           *
a/k/a Gary J. Semeniuk,                    *
                                           *
                        Appellee,          *      Appeal from the United
                                           *      States District Court for
            v.                             *      the Southern District of Iowa
                                           *
John F. Ault, Warden, ASP,                 *
and The State of Iowa,                     *
                                           *
                        Appellant.         *

_____

Submitted:  June 18, 1999

Filed:  September 15, 1999

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and KYLE, District Judge.[1]


KYLE, District Judge.


    Lewis J. Atley ("petitioner" or "Atley") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the

_____

    [1]  The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

Southern District of Iowa after being convicted of various drug-related crimes in Iowa state court. Petitioner claimed that he was entitled to a new trial because he was denied effective assistance of counsel due to his attorney's conflict of interest. The district court[2] granted Atley's petition for writ of habeas corpus. John F. Ault and the State of Iowa ("the Appellants") appeal and, for the reasons stated below, we affirm the judgment of the district court.

# I

Petitioner was arrested in 1994 after police discovered a psilocybin mushroom-growing operation in his home. After a six-count indictment was filed against the petitioner, attorney J.E. Tobey, III ("Tobey") was appointed to represent him. On November 16, 1994, Tobey filed a motion to withdraw, stating that he was uncomfortable representing petitioner because petitioner insisted on acting as co-counsel. The court granted the motion and appointed attorney Carroll J. Walker ("Walker") to represent petitioner.

On January 7, 1995, petitioner requested that Walker be replaced. The court granted the request, noting: "it appears that all communication between defendant and counsel had broken down." The court then appointed attorney Robert Weinberg ("Weinberg") to represent petitioner. On April 21, 1995, a pretrial conference was held and trial was scheduled for June 5, 1995.

On June 1, 1995, Weinberg learned that he had been hired, effective June 15, 1995, to replace Hugh Pries ("Pries") at the Scott County Attorney's office. Pries

---

[2] The HONORABLE ROBERT W. PRATT, United States District Judge for the Southern District of Iowa.

handled a large number of drug cases for the county attorney's office and had close relationships with the Quad-City Metropolitan Enforcement Group ("MEG") officers, who were to be the principal witnesses in the case against petitioner. Weinberg immediately informed petitioner that he had accepted a job with the Scott County Attorney's office and that he had ethical problems with his continued representation of petitioner.

On June 2, 1995, Weinberg filed a motion to withdraw as counsel of record, citing ethical and disciplinary rules, as well as constitutional concerns. Petitioner subsequently filed his own motion for removal of counsel and phoned a threat to Weinberg that he would ask the Iowa Supreme Court to sanction him.

On June 5, 1995, the court heard arguments on Weinberg's motion to withdraw. Both Weinberg and the State argued in favor of the motion:

> Mr. Weinberg: I feel that there has been adequate preparation taken so that an additional – a new attorney would just clean up those items that Mr. Atley had wished to pursue prior to trial, but I think that under all the circumstances – just to be quite candid with the court, I just feel that I'm put in a very difficult position, in terms of what the canons of ethics require.
> Mr. Atley, I think, as shown from the record, is a fairly difficult person to deal with. I've had rapport with him; however, on my answering machine this morning was a – you know threat to ask the Supreme Court to take sanctions about me, which after I talked with him last night – I mean – I had no inkling about, but – you know, I got different signals from him. I just think that there's such a breach in the attorney-client relationship that I could not be effective, and I think the outcome of this case is likely to be such that the fact of my having pursued a trial under these circumstances would raise serious questions about whether or not any future conviction would stand, that I have – I have that concern also.
> THE COURT: Does the State have anything it wishes to add?

MR. OTTESON: Yes, Your Honor. I have reviewed Canon 5, which states a lawyer should exercise independent professional judgment on behalf of a client, have also reviewed the ethical considerations in the disciplinary rules under that canon, and I concur with Mr. Weinberg in the conclusions that he has drawn from them.

The State is in a very difficult position in this case, in raising – in making a specific statement or a specific claim, since Mr. Weinberg is going to be, in the near future, working with us. Most of the cases and opinions that have dealt with changes of employment by lawyers have opted in favor of the client being given the rights, and not deprived of them, and I think that clearly, in this case, forcing this matter to trial today would be going against the general grain of those opinions.

After hearing from both counsel, the trial court denied the motion, stating that Weinberg had been a zealous advocate to that point in his representation of petitioner and that, based on its personal acquaintance with Weinberg, the Court had no doubts that he would continue to zealously represent petitioner. The trial court further noted that court-appointed attorneys, members of the defense bar, county attorneys and part-time magistrates often switch roles and are able to do so without difficulty. With regard to the MEG officers, the trial court stated:

The MEG officers, in addition to the prosecutors and the defense bar, all get along well and understand each other's roles, and will not be inclined to testify any differently at this trial than they would be otherwise, nor will they treat Mr. Weinberg any differently after June 15, when he changes hats.

Finally, the trial court stated that it didn't "give a huge amount of weight" to the concerns raised by petitioner because he was on his third attorney and it appeared that petitioner was engaged in an attempt to delay the proceedings.

-4-

The trial began on June 5, 1995, and, on June 8, 1995, the jury returned guilty verdicts on all six counts.[3] Petitioner was sentenced on June 27, 1995 to a term of imprisonment of 20 years.

On January 22, 1997, the Iowa Supreme Court affirmed the conviction. Atley petitioned for and was granted a rehearing en banc. The en banc court affirmed his conviction, with three justices dissenting. See State v. Atley, 564 N.W.2d 817 (Iowa), cert. denied, 513 U.S. 1046 (1997). The Iowa Supreme Court held that petitioner was not deprived of his Sixth Amendment right to counsel by the trial court's alleged failure to conduct an inquiry into Weinberg's conflict of interest. It began its analysis by noting that where a defendant or his attorney gives the trial court notice of an alleged conflict of interest and the trial court fails to inquire into the conflict, a reviewing court will presume prejudice upon a showing of possible prejudice. Id. at 825 (citing Holloway v. Arkansas, 435 U.S. 475, 484-91, 98 S. Ct. 1173, 1178-82 (1978)). Addressing petitioner's case, the Iowa Supreme Court stated that the actual or serious potential for conflict that might occur during the trial because of Weinberg's pending employment necessitated an inquiry by the trial court to assess its gravity. Id. at 829. The court found, however, that the proceedings conducted by the trial court were adequate because the "hearing" demonstrated that the trial court was "well aware of the possible conflicts of interest" and further

---

[3] Manufacture of a controlled substance (psilocybin) in violation of Iowa Code section 124.401(c)(6), possession of a controlled substance with the intent to deliver (psilocybin) in violation of section 124.401(1)(b), failure to affix a tax stamp (psilocybin) in violation of section 453B.12, possession with the intent to deliver (cannabis) in violation of section 453B.12, and possession of a controlled substance (methamphetamine) in violation of section 124.401(3).

inquiry was unlikely to uncover additional facts from which it could base its decision. Id.

On July 14, 1997, petitioner filed the Petition in the instant case. The district court granted the Petition, finding that the majority opinion of the Iowa Supreme Court was an unreasonable application of clearly established federal law on two separate and independent grounds: First, the Iowa Supreme Court unreasonably applied the United States Supreme Court's decisions in Holloway v. Arkansas, 435 U.S. 475, 98 S. Ct. 1173 (1978) and Wood v. Georgia, 450 U.S. 261, 101 S. Ct. 1097 (1981) when it held that the trial court made a constitutionally adequate inquiry into the alleged conflict of interest. Second, Weinberg's future employment created an actual conflict of interest and the Iowa Supreme Court unreasonably applied federal law that required the trial court to substitute new counsel for petitioner. The district court then determined that petitioner was entitled to a new trial.

**II**

Our review of petitioner's habeas petition is limited by the Antiterrorism and Effective Death Penalty Act of 1996, which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The parties agree that § 2254(d)(2) is not implicated by the Iowa Supreme Court's decision. Thus, our review is governed by § 2254(d)(1). Because § 2254(d)(1) directs this court to grant Atley's petition only if the trial court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, we must first identify the controlling case law.

## A.    Clearly Established Supreme Court Precedent

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has recognized that the right to counsel guaranteed by the Sixth Amendment includes the "right to representation that is free from conflicts of interest." Wood, 450 U.S. at 271, 101 S. Ct. at 1103; see also Cuyler v. Sullivan, 446 U.S. 335, 345-50, 100 S. Ct. 1708, 1716-19 (1980); Holloway, 435 U.S. at 481-87, 98 S. Ct. at 1177-80. When burdened by a conflict of interest, counsel "breaches the duty of loyalty, perhaps the most basic of counsel's duties" and, therefore, fails to provide effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 692, 104 S. Ct. 2052, 2067 (1984).

In Strickland, the Supreme Court held that to obtain a reversal of a conviction for ineffective assistance of counsel, a petitioner must show that counsel's performance fell below professional standards of competence, and that the deficient performance prejudiced the petitioner. Id., 466 U.S. at 687, 104 S. Ct. at 2064. The Court also recognized that in certain Sixth Amendment contexts, prejudice may be presumed. Id. at 692, 104 S. Ct. at 2067. Quoting from its decision in Cuyler, the Strickland Court noted that prejudice is "presumed only if the defendant demonstrates

that counsel 'actually represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" Id.

Cuyler applies, however, only to those cases in which a defendant raises no objection to his counsel's representation at or before trial. See Cuyler, 446 U.S. at 348, 100 S. Ct. at 1718. In Cuyler, the defendant argued that he was denied effective assistance of counsel because his lawyers had a conflict of interest due to their representation of multiple defendants. Id. at 345, 100 S. Ct. at 1716. At no time before or during the trial did the defendant or his lawyers object to the multiple representation. Id. at 337-38, 100 S. Ct. at 1712. The Supreme Court held that in order to "establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Id. at 348, 100 S. Ct. at 1718. The Cuyler Court recognized, however, that where a defendant makes a timely objection, the trial court has an obligation under Holloway to determine whether an actual conflict exists. Id. at 346, 100 S. Ct. at 1717.

In Holloway, the trial court appointed one public defender to represent all three defendants at the same trial. Holloway, 435 U.S. at 477, 98 S. Ct. at 1175. On several occasions prior to and during trial, the public defender asked the court to appoint separate counsel for each defendant because of a possible conflict of interest. See id. at 477-80, 98 S. Ct. at 1175-77. The trial court refused to consider the appointment of separate counsel. See id. The jury found all three defendants guilty. See id. at 481, 98 S. Ct. at 1177. The United States Supreme Court reversed their convictions, holding that the trial court erred by "fail[ing] either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to

warrant separate counsel." Id. at 484, 98 S. Ct. at 1178. The Court found the failure to appoint separate counsel or to make an adequate inquiry "deprived [defendants] of the guarantee of 'assistance of counsel.'" Id. at 484,488, 98 S. Ct. at 1179, 1181. Finally, the Holloway Court held that when a trial court fails to discharge its constitutional duty to determine whether the defendant is receiving assistance of counsel unburdened by a conflict of interest, prejudice is presumed and reversal of the conviction is automatic. See id. at 489, 98 S. Ct. at 1181; see also Wood, 450 U.S. at 272 n.18, 101 S. Ct. at 1104 n.18 (noting that Cuyler "mandates a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists'") (quoting Cuyler, 446 U.S. at 347, 100 S. Ct. at 1717)). [4]

Petitioner's Sixth Amendment claim is that, when notified of the potential conflict of interest, the trial court violated its constitutional duty under Holloway to conduct an adequate inquiry, thus requiring an automatic reversal. See Atley, 564 N.W.2d at 828. We find that this claim falls within the clearly established framework of Holloway, Cuyler, and Wood. Accordingly, we must next decide whether the Iowa

---

[4] The court notes that both Holloway and Cuyler involved situations where the alleged conflict of interest arose due to counsel's joint representation of co-defendants. The rule announced by these cases is not limited, however, to such situations. See, Wood, 450 U.S. at 268-74, 101 S. Ct. 1102-04 (finding that the trial court violated its duty to inquire into the conflict created by the fact that the defendant's lawyer was hired and paid by a third party); United States v. Horton, 845 F.2d 1414, 1418-20 (7th Cir. 1988) (applying Holloway and Cuyler to a defendant's claim that his attorney's application for a position as a United States Attorney created a conflict of interest that deprived him of his Sixth Amendment right to counsel).

Supreme Court's decision was "contrary to" or an "unreasonable application of" those decisions.

## B.  "Contrary to" or an "Unreasonable Application of"

28 U.S.C. § 2254(d)(1) provides that a petition for writ of habeas corpus cannot be granted unless the adjudication of the claim in state court proceedings resulted in a decision that was "contrary to, or involved an unreasonable application of," clearly established federal law.  The district court found that the Iowa Supreme Court's decision was not "contrary to" clearly established federal law.  We agree.  The conflict of interest issue presented by the instant case is neither a question of pure law, nor a case in which Supreme Court precedent requires a particular result. See Long v. Humphrey, No. 98-3409, 1999 WL 494096, at *2 (8th Cir. July 14, 1999) (finding that a state court's decision was not "contrary to" clearly established law because the habeas petition did not "present a question of pure law and because the manifest necessity standard [could not] be applied mechanically to require a particular result in Long's case.").  Thus, petitioner's habeas claim turns on the "unreasonable application of" prong of § 2254(d)(1).

A state court decision is an "unreasonable application of" clearly established federal law if the "decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Long, 1999 WL 494096, at *2-3 (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999) (en banc)).  In making this evaluation, our "mere disagreement with the [trial court's] conclusions is not enough to warrant habeas relief."  Matteo, 171 F.3d at 890.  To the extent that "inferior" federal courts have

decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue. See O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998).

### 1.      Duty to Inquire

On June 5, 1995, the state trial court heard argument from both Weinberg and the prosecutor that Weinberg could not continue to represent Atley.  As the Iowa Supreme Court recognized, the representations of Weinberg and the prosecutor alerted the trial judge to the "actual or serious potential for conflict that might occur during the trial" and "necessitated an inquiry by the court to assess its gravity." Atley, 564 N.W.2d at 829; see also id. at 828 (noting that it was applying Supreme Court authorities that require an inquiry because the trial court was fully advised of the existence of a potential conflict of interest).  Under Holloway, the trial court was then constitutionally obligated to either substitute new counsel or take adequate steps to ascertain the seriousness of the risk presented by the conflict.  The undisputed record makes clear, however, that the trial court asked no questions of counsel or of the defendant to ascertain the nature and extent of the conflict of interest.  The Iowa Supreme Court excused this failure, holding that the trial court was not required to make further inquiry into the factual nature of the conflict of interest because the hearing held by the trial court demonstrated that it was well aware of the possible conflicts of interest and that further questioning was unnecessary. Id.  Thus, the issue before this court is whether the Iowa Supreme Court's ruling on the adequacy of the trial court's inquiry constitutes a reasonable application of the rule announced in Holloway.  We conclude that it does not.

Although the record reflects that the trial court was aware of the areas in which a conflict of interest could have arisen, such knowledge alone does not satisfy the requirements of Holloway. Under Holloway, the purpose of the inquiry is to "ascertain whether the risk [is] too remote to warrant [new] counsel." Holloway, 435 U.S. at 484, 98 S. Ct. at 1178. In the instant case, the trial court appropriately identified Weinberg's relationship with the MEG officers who would be testifying, and whom Weinberg would be cross-examining, as one relevant area of concern. As the district court noted, an issue in the case was Atley's contention that the MEG officers intentionally and in bad faith destroyed evidence favorable to Atley. The trial court did not, however, make any inquiry into whether Weinberg would be able to zealously cross-examine these officers. Instead, the trial court stated its opinion that the "MEG officers, in addition to the prosecutors and the defense bar, all get along well and understand each other's roles, and will not be inclined to testify differently at this trial than they would be otherwise, nor will they treat Mr. Weinberg any differently after June 15, when he changes hats."

We recognize that the nature of the factual inquiry required by Holloway is necessarily case-specific, and that, in some cases, no inquiry may be required because all of the relevant facts have been disclosed to the court. Holloway cannot be interpreted so broadly, however, as to condone the "inquiry" conducted by the state court in the instant case. As the record shows, Weinberg raised in only the broadest strokes his potential conflicts of interest, including the potential conflict with the MEG officers who would be testifying in the case. The prosecution agreed that Weinberg's change of jobs warranted substitution of new counsel. In such a situation, the trial court must do more than substitute its opinions as to the congeniality among MEG officers, prosecutors and members of the defense bar, for

an actual inquiry into the factual basis of Weinberg's motion. Stated differently, the trial court's dialogue improperly assumed answers to questions that were never asked and were necessary to its determination of whether the alleged conflict of interest required the substitution of new counsel. Instead of ascertaining whether Weinberg would be able to vigorously cross-examine the very people with whom he would be working closely, the trial court opined that each side would perform its roles appropriately. Given the risk, as acknowledged by the Iowa Supreme Court, for an "actual or serious potential for conflict," the trial court failed to take adequate steps to ascertain the gravity of Weinberg's motion. Thus, we hold that the Iowa Supreme Court's conclusion that the trial court adequately inquired into the potential conflict of interest, evaluated objectively and on the merits, was an unreasonable application of clearly established Supreme Court precedent.[5]

In reaching this decision, we reject the Iowa Supreme Court's reliance on United States v. Horton, 845 F.2d 1414 (7th Cir. 1988). The Iowa Supreme Court's decision appears to suggest that an inquiry was not necessary because the instant case is factually similar to Horton and, as a result, the possibility of a conflict was so remote that no further inquiry by the trial court was necessary. Atley, 564 N.W.2d at 829-30. In Horton, the Seventh Circuit held that the Sixth Amendment right to counsel was not violated when the defendant's attorney had applied for a job as a United States Attorney. Id. at 1415, 1421. The Horton court held that the defense attorney's job did not create a per se actual conflict and that, under the facts of the

---

[5] Because we find that the Iowa Supreme Court's conclusion that the trial court adequately inquired into the potential conflict of interest was an unreasonable application of clearly established federal law, we need not address the district court's determination that an actual conflict of interest existed that required the appointment of new counsel for petitioner.

case, the possibility of a conflict was too remote to create an actual conflict. Id. at 1419-20. As a result, the Horton court found that the defendant had failed to establish a violation of his Sixth Amendment rights.

Horton, however, is easily distinguished from the instant case on numerous grounds. Most significantly, Horton did not raise his attorney's potential conflict of interest at trial, relying instead on a "vaguely-voiced distrust" of his counsel. See Horton, 845 F.2d at 1418. As a result, the Horton court applied the more stringent test set forth in Cuyler rather than Holloway. Id. at 1418-19 (distinguishing Holloway and noting that where a defendant raises a potential conflict of interest after trial, the court must apply the standard set forth in Cuyler). As a result, Horton was required to show, as a threshold matter, that there was an actual conflict of interest – that is, that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests. See id. In the instant case, however, Atley, his counsel, and the prosecutor raised the conflict of interest before the trial. As a result, this case is  governed by Holloway, which provides that prejudice to the defendant will be presumed upon a showing of possible prejudice. See id. at 1418 (citing Holloway, 435 U.S. at 484-91, 98 S. Ct. 1173 for the proposition that "'[i]f a defendant or his attorney gives the trial court notice of the alleged conflict and the trial court fails to inquire into the conflict, a reviewing court will presume prejudice upon a showing of possible prejudice."). Therefore, Horton was decided under a different standard than applies to petitioner's case and does not address whether petitioner had shown possible prejudice sufficient to trigger the trial court's duty to inquire into the nature of that conflict.

Horton is also factually distinguishable from the instant case. In Horton, the defendant was the only individual claiming that his counsel had a conflict of interest. Horton, 845 F.2d at 1416-18. Here, Atley, his counsel, and the prosecutor all represented to the court that Weinberg's new job created a conflict of interest that required the substitution of new counsel. Furthermore, Horton's counsel had only applied for a job with the United States Attorney's office, whereas here, Weinberg had actually accepted a position that required him to interact closely with the very officers he would be cross-examining. Both of these facts increased the possibility of prejudice to Atley and further distinguish the instant case from Horton.

Finally, we note that the trial court's concern that Atley was engaging in some sort of dilatory practice does not excuse its failure to adequately inquire into the nature of the alleged conflicts of interest. Although trial courts must, in general, be wary of defendants who seek dismissal of counsel as a means of delaying trial, the potential conflict of interest in the instant case was raised primarily by petitioner's counsel and was supported by the prosecutor. As the dissent noted in Atley, "[t]o ascribe to Atley a motive to delay would necessarily mean that the trial court was ascribing such a motive to Weinberg and the prosecutor as well." Atley, 564 N.W.2d at 839 (Lavorato, J., dissenting). No evidence exists in the record to support such a claim.

## 2. Appropriate Relief

Having determined that the Iowa Supreme Court's decision constitutes an unreasonable application of clearly established federal law, as announced by the Supreme Court in Holloway, we turn to petitioner's requested habeas relief. As

Holloway makes clear, a failure to conduct an adequate inquiry constitutes a violation of the Sixth Amendment right to counsel that requires reversal. This case is before us, however, on a petition for writ of habeas corpus, not on direct appeal. Because the Supreme Court has made clear that collateral review is different from direct review, see Brecht v. Abrahamson, 507 U.S. 619, 633-38, 113 S. Ct. 1710, 1719-22 (1993) ("The principle that collateral review is different from direct review resounds throughout our habeas jurisprudence."), we pause to make clear that petitioner's successful Holloway claim entitles him to habeas relief.

In Brecht, the Supreme Court held that constitutional trial errors would be evaluated under the harmless "beyond a reasonable doubt" standard set forth in Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967) only on direct appeal, and that in habeas cases the appropriate standard was the "less onerous harmless error standard" of Kotteakos v. United States, 328 U.S. 750, 66 S. Ct. 1239 (1946). Brecht, 507 U.S. at 623-24, 635-38, 113 S. Ct. at 1714, 1721-22. Brecht recognized, however, that cases involving constitutional trial errors are fundamentally different from cases involving constitutional violations, such as deprivation of the right to counsel, that are not subject to harmless-error analysis. Id. at 629-30, 113 S. Ct. at 1717; see also Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 1264-65 (1991) (distinguishing constitutional trial errors subject to harmless-error review from "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards."). The Brecht Court, drawing no distinction between collateral and direct review, recognized that the existence of constitutional defects not subject to harmless-error review "requires automatic reversal of the conviction because they infect the entire trial process." Brecht, 507 U.S. at 629-30, 113 S. Ct. at 1717.

As stated above, <u>Holloway</u> requires reversal where the trial court failed to discharge its duty to inquire into a known potential conflict because prejudice to the accused is presumed. <u>Holloway</u>, 435 U.S. at 487-89, 98 S. Ct. at 1180-81. In reaching this determination, the <u>Holloway</u> court stated that the harmless-error standard did not apply because the right to have conflict-free assistance of counsel "'is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial'" and because any form of harmless error analysis "would require, unlike most cases, unguided speculation." <u>Id.</u> at 488, 491, 98 S. Ct. at 1181-82 (quoting <u>Glasser v. United States</u>, 315 U.S. 60, 75-76, 62 S. Ct. 457, 467 (1942)). Thus, a <u>Holloway</u> violation is not a constitutional trial error subject to <u>Brecht</u>'s harmless error standard, but rather a constitutional defect that entitles petitioner to habeas relief. <u>See</u> <u>Hamilton v. Ford</u>, 969 F.2d 1006, 1013 (11th Cir. 1992) (granting petition for writ of habeas corpus because reversal of conviction is "automatic" when the trial court failed to adequately explore the possibility of a conflict of interest as required by <u>Holloway</u>). Stated differently, because <u>Holloway</u> instructs us to presume prejudice to the petitioner, he has satisfied his burden under <u>Strickland</u> to show that he was deprived of effective assistance of counsel in violation of the Sixth Amendment. <u>See</u> <u>Strickland</u>, 466 U.S. at 692, 104 S. Ct. at 2067. Accordingly, we affirm the habeas relief awarded by the district court.

In granting Atley's petition for writ of habeas corpus, the district court stayed its execution for 90 days to permit the State of Iowa to make a decision whether to prosecute petitioner again, and if so, time to provide Atley a new trial. Therefore, the writ shall issue unless, within 90 days from the date of this opinion, the state has commenced proceedings to retry the petitioner.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.