# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2347

_____

United States of America,

        Appellee,

v.

Luis A. Rodriguez,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Western District of Missouri.
\*
\*
\*

_____

Submitted: January 15, 2010
Filed: July 22, 2010

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Luis Rodriguez was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The district court[1] sentenced Rodriguez to 235 months' imprisonment. Rodriguez appeals his conviction and sentence. We affirm.

---

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

## I. Background

Officer Barry Nolan of the Kansas City Police Department stopped Rodriguez's car around 11:00 p.m. on April 3, 2008, upon discovering the car's license plates were registered to another vehicle. Nolan asked Rodriguez for a driver's license and Rodriguez responded he did not have one. Nolan placed Rodriguez under arrest. A pat-down search uncovered a loaded pistol in the pocket of Rodriguez's pants. Nolan conducted the search curbside for safety reasons because the stop occurred at a major intersection. As a result, the search occurred out of view of the police cruiser's in-car camera.

Police transported Rodriguez to headquarters. The next morning, Detective Stephen Shaffer interviewed Rodriguez concerning the firearm after Rodriguez signed a written Miranda[2] waiver. According to Shaffer, Rodriguez admitted to being a felon and stated that he knew he could not possess a firearm. Rodriguez then explained how he came to be carrying the gun the previous night. He had bought the weapon a few days earlier and had taken it to his girlfriend, from whom he was separated, for home protection. When she refused the firearm, Rodriguez placed it in his pocket and forgot about it until the officer discovered it during the search. Rodriguez also identified the gun that he had possessed from a photograph taken the night before. He declined to give a written statement.

On April 14, 2008, a grand jury indicted Rodriguez for being a felon in possession of a firearm. In May, Rodriguez's first appointed attorney withdrew due to a conflict of interest. In October, the magistrate judge relieved Rodriguez's second appointed counsel, after two pro se motions to substitute counsel, two hearings, and a continuance granted in part due to a breakdown in communications between

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

Rodriguez and the attorney. The magistrate judge appointed a third attorney and after granting an additional continuance, scheduled trial for December 8, 2008.

The morning of trial, Rodriguez requested new appointed counsel, presenting a litany of complaints against his attorney. He argued that counsel had deceived him into thinking that he would receive a lenient sentence from cooperating with the government and "conspired" with the prosecutor to have him plead guilty with knowledge that he was actually subject to an enhanced sentence. Other allegations included counsel's failure to sufficiently consult and communicate with him about the case, secure witnesses on his behalf, such as his estranged girlfriend, or generally prepare for trial. In explaining his distrust of his attorney, Rodriguez twice referred to disciplinary charges he claimed to have filed against defense counsel.[3] The district court did not pose questions concerning the disciplinary charges.

Defense counsel denied Rodriguez's allegations. The record indicates counsel and Rodriguez met concerning his case. Rodriguez's allegations of deceit and conspiracy seem to have stemmed from misunderstandings concerning his potential

---

[3]A copy of a formal complaint does not appear in the record, and Rodriguez's reply brief notes he did not file a complaint with the correct disciplinary body until after trial. Rodriguez moved on appeal to supplement the record with correspondence documenting his actions regarding the disciplinary charges. We grant the motion.

Rodriguez claims to have first contacted the Missouri Bar Association on December 1, 2008. In a response letter dated December 11, the Bar Association directed him to the Missouri Supreme Court's Office of Chief Disciplinary Counsel ("the Office"). Rodriguez wrote to the Office on December 15 and asked for paperwork to file a complaint, citing a conspiracy by appointed counsel and the prosecutor to defraud and mislead him and "false statements" they made to the court. Based on responses from the Office, Rodriguez appears to have followed up by letter in late January 2009. The Office informed Rodriguez that it declined to investigate defense counsel or the prosecutor. Rodriguez notes in briefing to this court that trial counsel had not yet been contacted regarding his complaint.

sentence. Counsel attempted to obtain written confirmation from the government that Rodriguez qualified for an enhanced sentence as an armed career criminal before the government formally filed notice with the court. Because Rodriguez's prior attorneys apparently had not informed Rodriguez of the possibility of an enhanced sentence, Rodriguez thought she "was making this up." Counsel also attempted to negotiate a plea agreement. It seemingly fell apart when Rodriguez disbelieved counsel's explanations that the government would not guarantee in writing that he would serve no jail time or that it would move for a downward departure before Rodriguez fully cooperated. Counsel further explained she had declined to file motions she considered frivolous. Finally, counsel stated that she had contacted the two witnesses Rodriguez had requested. She obtained stipulated testimony from one witness who was incarcerated. After a lengthy phone interview with Rodriguez's girlfriend, counsel determined that her testimony would potentially be detrimental to Rodriguez's case. Counsel stated that she had prepared and was ready for trial. The court also subsequently allowed the prosecutor to briefly address Rodriguez's allegations.

Addressing some of Rodriguez's main concerns, the court reminded Rodriguez that "any attorney who is appointed to represent you has to use their professional judgment in terms of how to proceed and what is appropriate and what's permissible under the rules we have to operate under." In ultimately denying the motion for new counsel, the court explained that the government could not guarantee a departure or any particular sentence in exchange for Rodriguez's cooperation and that the sentencing court retained discretion in imposing the sentence. The court also stated that it had "no reason to feel that or believe that [defense counsel] has not conducted herself in an appropriate and professional fashion." The district court then informed Rodriguez that he could continue with current counsel or proceed pro se, and it strongly advised against the latter. Rodriguez opted to represent himself, stating that "I'd rather represent myself and hang myself on a hangman's noose than have [defense counsel] put me there" and that he wanted "to go on record that the Court is forcing me to use ineffective assistance of counsel." The court ordered the appointed attorney to remain as standby counsel during trial.

-4-

At trial, Officer Nolan and Detective Shaffer testified to the above-described facts concerning Rodriguez's arrest and confession, and an ATF agent testified as to the gun's travel in interstate commerce. Rodriguez stipulated to his felon status. Rodriguez's defense was that he was set up: Officer Nolan planted the gun during the off-camera search and he made no statements whatsoever to Detective Shaffer concerning the possession of the gun. He argued he signed the Miranda waiver form merely to acknowledge that he understood his rights. Rodriguez ultimately secured the testimony of his estranged girlfriend, who testified that Rodriguez had come to her home the night of his arrest to help with some repairs. She confirmed that she and Rodriguez were "on and off" but she denied that Rodriguez offered her a gun.

During rebuttal summation, the prosecutor asked:

I'll ask you to remember one piece of testimony and whether this really rings true or not. [Rodriguez's ex-girlfriend] testified that the defendant and her had broken up. They were no longer together. And Detective Shaffer recounted to you that the defendant made a statement that the – that they had broken up and that's why the gun was being bought and presented to her. Ladies and gentlemen, how did Detective Shaffer know Mr. Rodriguez had broken up if Mr. Rodriguez didn't tell him? How did he know that? He knew that because Luis A. Rodriguez executed the Miranda waiver, not because he was just acknowledging he understood his Miranda rights.

The jury found Rodriguez guilty. Rodriguez subsequently moved pro se to set aside the verdict or grant a mistrial. He argued in part that the court should have substituted counsel and again referenced the disciplinary complaint. The district court denied the motion.

Prior to trial, the government had filed notice that it would seek an enhanced sentence under 18 U.S.C. § 924(e) based on Rodriguez's status as an armed career criminal. The notice contained a non-exhaustive list of four convictions from 2002, 1990, 1988, and 1985 as the basis for the enhancement. In addition, Rodriguez's

presentence report listed convictions dating to 1980 as qualifying predicate offenses. Rodriguez objected to his status as an armed career criminal, arguing in part that some of the predicate convictions were stale. The district court overruled Rodriguez's objections, adopted the presentence report's advisory guideline range of 235 to 293 months' imprisonment, and imposed a bottom-of-the-guidelines sentence.

## II. Discussion

On appeal, Rodriguez challenges the district court's refusal to substitute counsel, the propriety of the government's rebuttal argument, and his status as an armed career criminal.

## A. Substitution of Counsel

Rodriguez argues primarily that the district court's failure to ask questions about his filing of a disciplinary complaint against his attorney amounted to an inadequate inquiry into a known potential conflict of interest. We have recognized that "the Sixth Amendment right to counsel contains a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties." Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991). "[W]hen a defendant raises a seemingly substantial complaint about counsel, the judge has an obligation to inquire thoroughly" into the alleged problem. Id. (quotation omitted).

Rodriguez relies heavily on Atley v. Ault, 191 F.3d 865 (8th Cir. 1999), a habeas case in which we held the state court conducted an inadequate inquiry into a potential conflict of interest arising from defense counsel's acceptance of a job with the prosecutor's office a few days before trial. Id. at 872. Defense counsel, the defendant, and the government argued for substitution, and, notably, the defendant threatened his attorney that he would file for disciplinary sanctions. Id. at 867–68. In his new position, counsel would be required to work closely with law enforcement

officers who would serve as the principal witnesses against his client at trial. Id. at 867. The potential conflict from the new job was raised "in only the broadest strokes" before the state court, and we determined that the state court improperly "assumed answers to questions that were never asked" about the critical issue of counsel's ability to "vigorously cross-examine the very people with whom he would be working closely." Id. at 872.

We counseled, however, that the nature of the factual inquiry into potential conflicts is case-specific and that in some instances, the court would have the relevant facts without engaging in an intensive inquiry. Id.; see also Ausler v. United States, 545 F.3d 1101, 1104 (8th Cir. 2008) (finding no "elaborate inquiry" needed into potential conflict arising from threats of frivolous legal claims made by the defendant against the attorney). Here, upon careful consideration, we conclude that no further inquiry was required. Rodriguez maintains that the merits of any disciplinary complaint had no bearing on the scope of the inquiry into a potential conflict of interest. We disagree, see Ausler, 545 F.3d at 1104, and observe that the district court permitted Rodriguez ample opportunity to explain his concerns regarding counsel's representation, rather than merely assuming answers to questions it should have asked. Rodriguez does not now claim that he included in the disciplinary complaint allegations different or additional to those he presented to the district court. The district court also heard from defense counsel and the prosecutor. Unlike Atley, neither defense counsel nor the prosecutor indicated a belief that substitution was warranted for any reason and the record does not suggest that defense counsel found herself unwilling or unable to proceed with his defense. Rodriguez asserts that the court should have at least ascertained when the complaint was filed. Further inquiry, however, would have only underscored that no formal charges had been filed prior to trial, lessening the risk that defense counsel would have felt her loyalties divided in presenting his defense.

Rodriguez also argues that he nonetheless demonstrated justifiable dissatisfaction with appointed counsel warranting substitution. See United States v. Davidson, 195 F.3d 402, 407 (8th Cir. 1999) (defendant's burden to show justifiable dissatisfaction). It is well established that a defendant does not have the absolute right to the counsel of his choice. United States v. Mentzos, 462 F.3d 830, 839 (8th Cir. 2006). Rather, justifiable dissatisfaction necessitating new counsel can arise from an irreconcilable conflict between the defendant and the attorney, a complete breakdown in their communications, or an actual conflict of interest resulting from continued representation. E.g., Smith, 923 F.2d at 1320.

We are satisfied the district court did not abuse its discretion in denying substitution of counsel. United States v. Boone, 437 F.3d 829, 839 (8th Cir. 2006) (standard of review). When confronted with requests for new counsel, we have recognized that the district court is forced to weigh competing factors, including "the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job." Hunter v. Delo, 62 F.3d 271, 274 (8th Cir. 1995). Last-minute requests to substitute counsel such as occurred here remain disfavored. United States v. Webster, 84 F.3d 1056, 1062 (8th Cir. 1996).

Rodriguez acknowledges the filing, or the threat of filing, a disciplinary complaint did not create a *per se* conflict of interest necessitating a new attorney. See United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993) (noting appointed counsel could not have "gleaned any advantage for himself in disciplinary proceedings before the state bar by failing to employ his best exertions on the [defendant's] behalf at trial"); see also Winfield v. Roper, 460 F.3d 1026, 1040 (8th Cir. 2006) (noting a defendant's filing of a lawsuit against attorney does not necessarily create a conflict of interest); Carter v. Armontrout, 929 F.2d 1294, 1299–1300 (8th Cir. 1991) (same); Smith, 923 F.2d at 1321 n.11 (same). Rodriguez offers little in the way of serious argument that an actual conflict of interest arose in this case. As the district court

observed, the record does not show appointed counsel failed to act zealously on his behalf. Furthermore, Rodriguez's own general dissatisfaction with counsel's performance or disagreement with her tactical decisions did not automatically entitle him to new counsel. Boone, 437 F.3d at 839; see also United States v. Grady, 997 F.2d 421, 424 (8th Cir. 1993). Nor did he have a right to an attorney "who will docilely do as she is told," Hunter, 62 F.3d 271 at (8th Cir. 1995) (quotation omitted), or advance meritless legal theories, United States v. Hart, 557 F.2d 162, 163 (8th Cir. 1977) (per curiam).

Rodriguez claims he and his attorney were "barely speaking" by the time of trial, but the record does not support this allegation. It is well established that a defendant does not have the right to a "meaningful relationship" with appointed counsel. United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992). Rodriguez and defense counsel expressed frustration with one another during the pre-trial hearing, and they may not have been on friendly terms. However, he has not shown their abrasive relationship resulted in a breakdown in communications or an irreconcilable conflict. See id.

Rodriguez also points to his "steadfast" resolution to represent himself as evidence of justifiable dissatisfaction with counsel. His decision to proceed pro se rather than accept adequate representation does not demonstrate the court abused its discretion in failing to provide substitute counsel. Although the choice between "an unprepared counsel or no counsel at all may violate the right to counsel, there is no constitutional difficulty where the defendant is provided the real alternative of choosing between adequate representation and self-representation." Mentzos, 462 F.3d at 839 (internal citation omitted). Rather, "a district court may properly require the defendant to choose either to proceed *pro se*, with or without the help of standby counsel, or to utilize the full assistance of counsel, who would present the defendant's defense." Id. (internal quotation and citation omitted). That is what occurred here. Rodriguez chose to proceed pro se, a decision he does not now argue on appeal was

unknowingly or involuntarily made. We find no error in the district court's decisions on substitution of counsel.

B. Rebuttal Summation

Rodriguez asserts the prosecutor's rebuttal summation implied that he brought the gun to his ex-girlfriend's home the night of his arrest in order to harm her and was improperly and prejudicially inflammatory. We find this argument to be without merit and conclude he is not entitled to a new trial based on the prosecutor's statement.

"The trial court has broad discretion in controlling closing arguments and without a clear showing of abuse, that discretion will not be overturned." United States v. Nelson, 988 F.2d 798, 807 (8th Cir. 1993) (quotation omitted). "The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial." United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985). In evaluating the prejudicial effect of an improper remark, we consider: (1) the cumulative effect of the misconduct; (2) any curative actions taken by the court; and (3) the strength of the evidence against the defendant in the context of the entire trial. United States v. French, 88 F.3d 686, 689 (8th Cir. 1996). "The relevant question ultimately is whether the prosecutor's comments, if improper, so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Mullins, 446 F.3d 750, 757 (8th Cir. 2006) (internal quotation omitted).

Rodriguez contends the statement "they had broken up and that's why the gun was being bought" improperly suggested a "nefarious" motive for his possession of the gun. In advancing this argument, Rodriguez strips a single phrase from the sentence in which it was originally uttered and from the broader argumentative

-10-

posture in which the rebuttal appeared. The government was attempting to rehabilitate Detective Shaffer's testimony, which it was permitted to do. See United States v. Bentley, 561 F.3d 803, 813 (8th Cir. 2009). Rodriguez claimed in closing that Shaffer had lied about Rodriguez's confession. In rebuttal, the prosecutor argued that the jury could believe Shaffer because there was no other way Shaffer could have known about the nature of Rodriguez's relationship with his ex-girlfriend. The allegedly improper remark was part of a reference to Shaffer's testimony that Rodriguez had the gun to give to his ex-girlfriend for protection. We find the prosecutor's remark neither misleading nor inflammatory. Rather, it was part of a proper response, based on evidence presented in the case, to Rodriguez's summation arguments. Even if the remark could be construed as improper, we do not believe, that it prejudiced Rodriguez, given its isolated nature and the strong evidence against him.

C. 18 U.S.C. § 924(e) enhancement

An individual convicted of violating 18 U.S.C. § 922(g) who has three previous convictions "for a violent felony or a serious drug offense, or both" is subject to a fifteen-year mandatory-minimum sentence as an armed career criminal. 18 U.S.C. § 924(e)(1); see also U.S.S.G. § 4B1.4. Rodriguez renews his argument that some of the predicate convictions are too remote in time to serve as the basis for the enhancement. As Rodriguez acknowledges, we have recognized that the statute does not contain a time limit for predicate offenses and have concluded Congress would have included a time limit had it wanted to do so. See United States v. McConnell, 916 F.2d 448, 450 (8th Cir. 1990) (citing United States v. McClinton, 815 F.2d 1242 (8th Cir. 1987)).

Rodriguez asserts instead that the use of decades-old convictions to enhance a sentence violates due process. He observes that the felon-in-possession conviction standing alone carries a statutory maximum sentence of ten years, see 18 U.S.C. §

-11-

924(a)(2), but after operation of §924(e), his sentence nearly doubled. He maintains that where two of the predicate offenses verge on or exceed twenty years old, the enhanced sentence is based on an unconstitutionally "arbitrary distinction" between offenders. See Chapman v. United States, 500 U.S. 453, 464–65 (1991) ("A person who has been convicted is eligible for, and the court may impose, whatever punishment is authorized by statute . . . so long as the penalty is not based on an arbitrary distinction violating the Due Process Clause of the Fifth Amendment"). He offers no support for this contention, and we reject this challenge to his sentence. United States v. Preston, 910 F.2d 81, 89 (3d Cir. 1990) ("[n]either the Due Process Clause of the Fifth Amendment nor any other constitutional provision" prohibits consideration of all prior felony offenses for purposes of § 924(e), regardless of age); see also United States v. Chester, 1992 WL 352633, at *2 (5th Cir. 1992) (unpublished per curiam) (rejecting a due process challenge to U.S.S.G. § 4B1.4 based on age of convictions).

For the foregoing reasons, we affirm Rodriguez's conviction and sentence.

_____