# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2769

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Ronald Eugene Jones, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 19, 2011
Filed: December 5, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Ronald E. Jones was convicted of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 841(b)(1)(A), and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). Jones appeals his conviction, arguing that the district court[1] violated both his Sixth Amendment right to counsel of his choice and his constitutional right to be present at critical stages of trial. We affirm.

_____

[1] The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

## I.

In January 2007, the Drug Enforcement Agency (DEA) began investigating the activities of a drug trafficking organization that was moving kilogram quantities of heroin from San Diego, California, to St. Louis, Missouri. The DEA investigation revealed that Jones was receiving heroin from a supplier in San Diego and then reducing the drug into smaller quantities for distribution in St. Louis.

After intercepting telephone conversations between Jones and his heroin supplier through a wiretap on the supplier's phone, the DEA obtained a court-authorized wiretap for Jones's phone. The DEA used these wiretaps to intercept phone calls between Jones and the heroin supplier in which Jones arranged to send a courier to San Diego to pick up heroin. On June 1, 2008, Jones was arrested pursuant to a criminal complaint. Two days later, detectives of the St. Louis Metropolitan Police Department learned that one of Jones's co-conspirators was a convicted felon in possession of a firearm. The police arrested the co-conspirator and seized the firearm. After his arrest, the co-conspirator told the detectives that Jones gave him the firearm in question.

Shortly after his arrest, Jones retained the law firm of Rosenblum, Schwartz, Rogers & Glass, P.C. During the course of the representation, attorneys N. Scott Rosenblum, John P. Rogers, and Gilbert C. Sison appeared on Jones's behalf. On June 26, 2008, Jones was charged with conspiracy to distribute heroin and criminal forfeiture of the property Jones derived from drug sales. On October 8, 2008, Jones filed a motion to suppress the contents of any electronic surveillance. On March 6, 2009, the magistrate judge issued a report recommending that Jones's suppression motion be denied. After receiving two extensions of time from the district court, Jones filed an objection to the report and recommendation. The district court adopted the report and recommendation on April 30, 2009.

Trial for Jones and a co-defendant was initially scheduled for April 21, 2009. On three separate occasions–March 21, June 22, and August 26–Jones moved to continue his trial without any objection from the Government. Jones also waived his right to a speedy trial on two occasions during this time period. The district court granted all three of Jones's motions to continue and ultimately rescheduled trial for October 26, 2009. On September 10, 2009, a grand jury returned a superseding indictment against Jones and his co-conspirators, adding a weapons-possession charge against Jones based on the firearm seized from Jones's co-conspirator.

In an ex parte hearing before the magistrate judge a week before trial, Jones made an oral pro se motion to continue trial and substitute counsel. Jones asserted a conflict with his defense attorneys, claiming that they refused to file a motion to suppress the weapon identified in the superseding indictment. Jones also claimed that his attorneys would not acquiesce to Jones's request for a second motion to exclude the wiretap recordings. Finally, Jones expressed his belief that Rogers, who was designated by the firm to try the case, was not prepared for trial because he had failed to interview certain witnesses. Jones argued that a fourth continuance was necessary for Rogers to fully prepare or for Jones to retain new counsel.

In response, Rogers stated that he had explained to Jones that there was almost certainly a lack of standing to challenge the search that produced the weapon, and that Jones's best defense strategy would be to force the Government to prove that Jones actually possessed the weapon. Rogers also explained to Jones that filing a motion to suppress would require Jones to assert a possessory interest in the weapon, which Rogers believed would be detrimental to Jones's defense. Rogers then stated that he could not, in good faith, file a second motion to exclude electronic surveillance after the wiretap tapes were found legally admissible by the magistrate judge. As to Jones's claims of unpreparedness, Rogers stated on the record that he was "in trial mode," that he had conducted most of the necessary witness interviews, and that the

specific witness Jones wanted Rogers to interview had been recently located and was to be interviewed that very day.

On October 21, 2009, the magistrate judge issued an order denying Jones's pro se motion for a continuance. Two days later, Rosenblum moved, under seal, to continue the trial so Jones could retain new counsel. Rosenblum noted that Jones was "uncomfortable with his retained counsel representing him at a trial in this matter." Rosenblum also admitted that the relationship between Jones and his attorneys was "irretrievably damaged" due to Jones's lack of confidence in Rosenblum and Rogers. However, Rosenblum strongly denied that Jones had any legitimate basis for his mistrust. The district court denied the motion that same day.

On the morning of trial, Jones appeared with Rogers and renewed his pro se motion to continue the trial and substitute counsel. His proposed substitution, Chet Pleban, was present at the hearing. In a hearing and an ex parte sidebar, Jones was given an opportunity by the court to explain his request. Jones claimed that Rogers hardly spoke with him other than to advise him to plead guilty, despite his wish to go to trial. Jones also claimed that Sison and Rogers did not provide him with an evidentiary hearing transcript he requested. He then restated his belief that Rogers was unprepared to go to trial and advocate zealously on his behalf.

In response, Rogers again characterized the dispute as one based primarily on defense counsel's trial strategy. Rogers acknowledged that the relationship was strained, but explained that it "wasn't in any way related to the efforts of the law firm," but rather Jones's "genuine desire not to communicate with his lawyers" after repeated explanations of how the attorneys were handling the case. The district court agreed that Jones's claims were "not credible," and concluded that there was no basis to relieve Rogers and his firm from the case. The court found that Rogers was well-prepared and agreed that the conflict was over trial strategy, noting that "there's no

requirement that a client has to like the ideas and concepts of his lawyer." Trial for Jones and his co-defendant began as scheduled.

After a seven-day trial, the jury began deliberations. After sending several questions via notes to the district court, the jury asked to hear the wiretapped conversations between Jones and the heroin supplier and between the heroin supplier and one of the DEA's confidential informants. The court read this request aloud to the courtroom, which included Jones, Rogers, and the Government. Because the audio playback equipment was in the courtroom, the district court proposed that all parties exit the courtroom and allow the jury to listen to the tapes there. Rogers stated that he was willing to be absent from the playback, but asked for additional assurances that the correct conversations would be replayed. To make sure only the requested conversations would be played in the correct order, the district court arranged for Special Agent David Nelson, who had played the tapes during trial, to play them again. As an additional precaution, the district court asked the court security officer to oversee the playback and prevent any extraneous interaction between Agent Nelson and the jury. The Government, after consulting Rogers, created a list of the specific conversations to be played, which the court read aloud to the parties. The courtroom was cleared and the tapes were played for the jury.

After several hours of deliberations, the jury found Jones guilty on both counts of the superseding indictment. The district court sentenced Jones to 235 months imprisonment on Count 1, and 60 months imprisonment on Count 2, to be served consecutively, followed by a 5 year period of supervised release.

II.

On appeal, Jones argues that the district court violated his Sixth Amendment rights by (1) denying Jones's motion to continue trial and substitute counsel and (2)

failing to perform an adequate inquiry into Jones's claims of an irreconcilable conflict in the attorney-client relationship. We address each argument in turn.

## A.

Jones argues that the district court erred in denying his motion to continue in order to substitute counsel in violation of his Sixth Amendment right to counsel of his choice. "We review the denial of a request for a continuance in order to substitute counsel for an abuse of discretion." United States v. Cordy, 560 F.3d 808, 815 (8th Cir. 2009).

"[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent that defendant even though he is without funds." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006) (quotation omitted). However, "[t]he right to choice of counsel is not absolute, and is 'circumscribed in several important respects.'" United States v. Whitehead, 487 F.3d 1068, 1071 (8th Cir. 2007) (quoting Gonzalez-Lopez, 548 U.S. at 144). Specifically, the defendant's "right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." United States v. Vallery, 108 F.3d 155, 157 (8th Cir. 1997).

Accordingly, "trial courts are vested with broad discretion in matters of continuances for the purpose of substituting counsel." Cordy, 560 F.3d at 815 (quotation omitted). "In exercising its discretion, the district court must carefully balance the defendant's right to be represented by the counsel of his choice against the court's interest in the orderly administration of justice." Id. (quotations omitted). "Last-minute requests to substitute counsel . . . remain disfavored," United States v. Rodriguez, 612 F.3d 1049, 1054 (8th Cir. 2010), and "a trial court's discretion is at

its zenith . . . when the defendant endeavors to replace counsel shortly before trial." Cordy, 560 F.3d at 817 (quotation omitted).

We have identified factors a district court should weigh when determining whether to grant a continuance. These factors include:

> (1) the nature of the case and whether the parties have been allowed adequate timing for trial preparation;
> (2) the diligence of the party requesting the continuance;
> (3) the conduct of the opposing party and whether a lack of cooperation has contributed to the need for a continuance;
> (4) the effect of the continuance and whether a delay will seriously disadvantage either party; and
> (5) the asserted need for the continuance, with weight to be given to sudden exigencies and unforeseen circumstances.

Cordy, 560 F.3d at 815-16 (quotation omitted).

Although Jones's case involved multiple defendants and a superseding indictment, Rogers had adequate time to prepare for trial. From the time Jones retained Rosenblum, Schwartz, Rogers & Glass, P.C. in early June 2008 to his trial in late October 2009, Rogers and his firm had over sixteen months to prepare. During that time, Jones sought and received continuances on three separate occasions. Rogers told the magistrate judge he was "in trial mode," which indicated that the firm was prepared to try the case. And though a new firearm possession charge was brought against Jones in the superseding indictment of September 10, 2009, less than two months before trial, this charge was based on evidence Jones and his attorneys knew about well in advance. Indeed, the indictment of June 26, 2008 alluded to the elements of the firearm charge, alleging that Jones had provided a co-conspirator with a handgun in furtherance of the drug trafficking conspiracy. Therefore, the district court did not abuse its discretion in finding that there was adequate time for defense counsel to prepare.

Three of the remaining Cordy factors also weigh against Jones. There is nothing to suggest that the Government contributed to the perceived need for a continuance. As for the effect of the continuance, the attorney for the co-defendant had no objection to it. However, the district court determined that should the continuance be granted, little would change in the form and quality of representation Jones would receive. It was also uncertain when Pleban, the defense attorney suggested by Jones as a replacement for Rogers, would be ready to try the case were he to be retained; as the district court observed, it could take a new attorney anywhere from one week to six months "to get together and review everything he needs to review." Finally, as discussed below in greater detail, the district court investigated Jones's asserted need for the continuance and found it baseless. Under these circumstances, the district court could have easily concluded that Jones's request was little more than a delay tactic.

As to Jones's diligence in requesting the continuance, it is unclear from the record whether Jones was sufficiently prompt in bringing the matter before the court. After all, one of Jones's alleged grievances in support of the motion was Rogers's failure to file a second suppression motion after his first suppression motion was denied on April 30, 2009, over five months before trial. However, Jones's dissatisfaction was not limited to the suppression motion and Rosenblum described the deterioration of the attorney-client relationship as occurring "over the course of the past couple of weeks leading up to trial." Nevertheless, the other factors substantially outweigh this one factor, and we cannot find any abuse of discretion in denying Jones's motion to continue in order to substitute counsel.[2]

---

[2] At oral argument, Jones asserted that the district court should have treated the motion to continue in order to substitute counsel as two distinct motions. Jones argued that this approach should have led the district court to deny the motion to continue based on the Cordy factors if it deemed continuance inappropriate, but should have then inquired as to whether the proposed substitute counsel was prepared to try Jones's case that day. However, the pretrial transcript reveals that both Jones

Jones also argues that the district court violated his Sixth Amendment right to counsel by failing to make a sufficient inquiry into his claims regarding the breakdown of the attorney-client relationship. "[T]he Sixth Amendment right to counsel contains a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties." Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991). This right is not violated by general dissatisfaction or disagreements over strategy because there is no "right to an attorney who will docilely do as she is told or advance meritless legal theories." Rodriguez, 612 F.3d at 1055 (quotation omitted). Nevertheless, "'[w]hen a defendant raises a seemingly substantial complaint about counsel, the judge has an obligation to inquire thoroughly' into the alleged problem." Id. at 1053 (quoting Lockhart, 923 F.2d at 1320). However, "the nature of the factual inquiry into potential conflicts is case-specific," and a thorough inquiry may not necessitate a separate hearing on the matter. Id. at 1054 (noting that "in some instances, the court would have the relevant facts without engaging in an intensive inquiry").

Jones relies primarily on Atley v. Ault, 191 F.3d 865 (8th Cir. 1999) to argue that the district court should have engaged in a more in-depth investigation of his conflict of interest claim. In Atley, a case before us on habeas review, the defendant's

---

and Rogers presented the motion to substitute counsel as contingent on the court granting the motion to continue. Rogers explained that Pleban "voiced his intention to enter his appearance on behalf of Mr. Jones, *if the case were to be continued*," and it appears that Jones admitted that his new attorney "can't come in today and start the trial" because he was unfamiliar with the details of the case. (Transcript of Jury Trial: Pretrial and Voir Dire Proceedings at 5, 28.) Under these circumstances, the district court acted appropriately in treating Jones's request as a single motion to continue in order to substitute counsel.

attorney had accepted a job with the prosecutor's office a few days before trial. Id. at 867. Rather than ascertain whether this potential conflict would prevent defense counsel from zealously representing his client, the state court "assumed answers to questions that were never asked" and merely "opined that each side would perform its roles appropriately." Id. at 872. We held that the state court conducted an inadequate inquiry into such a serious potential conflict of interest. Id. at 872.

However, we believe this case is more like United States v. Rodriguez. Similar to Jones, the defendant in Rodriguez requested new counsel on the eve of trial and complained of his "counsel's failure to sufficiently consult and communicate with him about the case, secure witnesses on his behalf, . . . or generally prepare for trial." Rodriguez, 612 F.3d at 1051. In Rodriguez, the district court investigated these complaints by questioning both the defendant and defense counsel and determined that the defendant had failed to establish a total breakdown in communication or an irreconcilable conflict. Id. at 1055. Because the court allowed the defendant "ample opportunity to explain his concerns regarding counsel's representation," we held that the court satisfied its duty to inquire and did not abuse its discretion when it ultimately denied substitution of counsel. Id. at 1054.

Here, both the magistrate judge and the district court investigated Jones's claim. The report and recommendation by the magistrate judge reveals an inquiry into Jones's allegations that gave Jones "ample opportunity to explain his concerns." The magistrate judge then asked defense counsel about Jones's claims and determined that they were without merit. The pretrial transcript of the district court's examination of Jones and Rogers further supports the conclusion that the court made an appropriate inquiry. Jones had multiple opportunities to fully explain his arguments, as the district court repeatedly asked Jones why he felt new counsel was necessary. At one point, the district court pointedly asked Jones for "any reasons why Mr. Rogers would not be able to fairly, adequately, professionally, and reasonably

and effectively represent [him] as an attorney in this case." Jones was unable to articulate a reason other than his belief that defense counsel was unprepared and his own sense of discomfort. Like the defendant in Rodriguez, Jones was unable to establish anything more than general dissatisfaction with his attorney's trial strategy. The district court therefore satisfied its duty to inquire into Jones's claims and did not abuse its discretion in determining that the relationship between Jones and his defense counsel did not rise to the level of a conflict necessitating a continuance and a new attorney.

## III.

Jones also argues that the district court violated his right to be present for critical stages of trial by permitting the playback of the wiretap tapes outside his presence. Generally, "[w]e review whether a district court proceeding violated a defendant's right to be present under an abuse of discretion standard." United States v. Moe, 536 F.3d 825, 829 (8th Cir. 2008). And when the defendant fails to assert a right at the trial court level, we engage in plain error review. Id. at 829.

However, we need not scrutinize the district court's decision on this issue for an abuse of discretion or for plain error because Jones waived his right to object. "The Supreme Court has distinguished between a right that is inadvertently left unasserted and one that is intentionally relinquished or abandoned, noting that the latter constitutes a waiver that extinguishes a claim altogether." United States v. Gutierrez, 130 F.3d 330, 332 (8th Cir. 1997) (citing United States v. Olano, 507 U.S. 725, 733 (1993)). "While forfeited claims are subject to appellate review under the plain error standard, waived claims are unreviewable on appeal." United States v. Booker, 576 F.3d 506, 511 (8th Cir. 2009). Here, the record demonstrates that Jones not only failed to object to the manner of the playback of the tapes, but that his defense counsel assisted in devising the method by which the jury would hear the

tapes. While Rogers initially expressed some concern over the possibility that the wrong conversations would be played, the parties ultimately agreed to jointly compile a list of the conversations that would satisfy the jury's request. Rogers also told the judge he was "glad not to be here" for the playback in the courtroom, indicating that he had no objection to the court's suggestion. Jones was present at this stage and never indicated that he wished to be present at the tape playback. Under these circumstances, we believe that Jones's right to challenge the district court's resolution was waived and "our plain error analysis must come to a grinding halt." Id. (quotation omitted).[3]

We also reject Jones's contention that the playback of the tapes for the jury amounted to structural error. Structural errors are "defects affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Becht v. United States, 403 F.3d 541, 547 (8th Cir. 2005) (quotation omitted). Such errors "call into question the very accuracy and reliability of the trial process and thus

_____

[3] Even if Jones merely forfeited his right to be present, he has failed to bring forward any evidence of plain error. In order to prevail under plain error review, a defendant "must show that the district court committed an error that is plain, i.e. clear under current law, that he was prejudiced by the error, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Delgado, 653 F.3d 729, 735 (8th Cir. 2011). Whether a defendant has a right to be present for the replaying of admitted wiretap evidence during jury deliberations is far from clear. See United States v. Sobamowo, 892 F.2d 90, 96 (D.C. Cir. 1989) (finding no confrontation clause or due process violation where the defendant was absent when audio-taped evidence was replayed for the jury). More importantly, Jones brought forward no evidence of misconduct in the replaying of the tapes and therefore could not show how he was prejudiced in any way by the alleged error. Finally, Jones failed to show how any alleged error affected "the fairness, integrity, or public reputation" of the proceedings, especially when the great weight of the evidence introduced at trial indicated that Jones was guilty of the charged crimes.

are not amenable to harmless error analysis, but require automatic reversal." McGurk v. Stenberg, 163 F.3d 470, 474 (8th Cir. 1998). These extreme errors have been recognized in a very limited set of circumstances, such as "the complete denial of counsel, a biased judge, racial discrimination in jury composition, denial of a public trial, and a defective jury instruction on the reasonable-doubt standard of proof." Becht, 403 F.3d at 547. The error alleged by Jones–the possibility that Agent Nelson spoke to the jury or that the wrong tapes were played–does not fall within any of the existing categories of structural error. Moreover, we have previously declined the opportunity to recognize structural error when faced with similar allegations, holding that "a juror's exposure to extraneous information is not structural error." Helmig v. Kemna, 461 F.3d 960, 963 (8th Cir. 2006). Accordingly, Jones has failed to show any structural error in his trial.

IV.

For the foregoing reasons, we affirm Jones's conviction.

_____